United States District Court
Southern District of Texas

**ENTERED**

April 16, 2025

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GABRIEL BRANDON GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No: 1:23-cv-00097 |
| | § | |
| UNITED PARCEL SERVICE, INC., | § | |
| | § | |
| Defendant. | § | |

### MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

Before the Court are (1) Defendant United Parcel Service's ("UPS") "Rule 12(c) Motion for Judgment on the Pleadings" ("Rule 12(c) Motion"); (2) Plaintiff Gabriel Brandon Garza's "Response to Defendant's Rule 12(c) Motion" (Garza's "Response"); and (3) Defendant UPS's "Reply in Support of Rule 12(c) Motion for Judgment on the Pleadings" (UPS's "Reply"). Dkt. Nos. 33, 37, 40. For the reasons discussed herein, the undersigned **RECOMMENDS** that UPS's Rule 12(c) Motion be **GRANTED IN PART,** and **DENIED IN PART**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2023, Plaintiff Gabriel Brandon Garza sued Defendant United Parcel Service, Inc. ("UPS") in state court, asserting claims under Chapter 21 of the Texas Labor Code ("TCHRA").[1] Dkt. No. 1-2 at 1; Tex. Labor Code § 21.001, *et seq*. Garza, who is deaf, alleged that UPS denied him promotion opportunities and reasonable accommodations because of his deafness. Dkt. No. 1-2 at 3–4. UPS removed the suit, invoking this Court's diversity and federal question jurisdiction. Dkt. No. 1 at 1; 28 U.S.C. §§ 1331, 1332, 1441, and 1446(b).

---

[1] Texas courts refer to Chapter 21 of the Texas Labor Code as the Texas Commission on Human Rights Act ("TCHRA"). *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010).

On October 25, 2023, Garza filed his First Amended Complaint, repleading the facts alleged in his original state court petition and adding claims under the Americans with Disabilities Act ("ADA"), in addition to the TCHRA claims. [2] Dkt. No. 11 at 1. In sum, Garza contends that UPS: (1) denied and continues to deny him promotion opportunities to driver and other full-time positions;[3] (2) refused him reasonable accommodations to work as a driver or other full-time positions; and (3) denied and continues to deny him notice and information about bid and promotion opportunities. *Id.* at 4. Garza asserts that UPS's discriminatory practices are based on a written policy which "screens out or tends to screen out" deaf individuals. *Id.* at 5. UPS timely answered. Dkt. No. 12.

Dispositive motions arrived in three waves. First, on November 5, 2024, UPS moved under Federal Rule of Civil Procedure 12(c) for Judgment on the Pleadings, seeking dismissal of Garza's claims. Dkt. No. 33 at 6–8; Fed. R. Civ. P. 12(c). Garza responded and UPS replied in support of judgement. Dkt. Nos. 37, 40. Then, on December 12, 2024, Garza filed a Motion for Partial Summary Judgment. Dkt. No. 43. UPS responded and Garza replied. Dkt. Nos. 58, 60. Finally, on December 13, 2024, UPS filed its own Motion for Summary Judgment. Dkt. No. 49. Garza responded and UPS replied. Dkt. Nos. 57, 61. UPS's Rule 12(c) Motion is ripe for consideration.[4]

---

[2] It is well settled that a properly filed amended complaint supersedes the original complaint, which is thereafter treated as nonexistent. *See Washer v. Bullitt Cnty.*, 110 U.S. 558, 562 (1884) ("When a petition is amended by leave of the court, the cause proceeds on the amended petition."); *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied*, 98 S. Ct. 730 (1978); Fed. R. Civ. P. 15(a). Therefore, the Court will analyze Garza's claims as alleged in his First Amended Complaint.

[3] Garza also contended that UPS excluded and "failed to hire him for non-Driver positions for which he is qualified, because of his disability." Dkt. No. 11 at 7. However, Garza has since voluntarily abandoned this claim. Dkt. No. 37 at 23.

[4] In this Report and Recommendation, the Court analyzes UPS's Rule 12(c) Motion only. A Report and Recommendation addressing the parties' cross-motions for summary judgment and related briefings and exhibits (Dkt. Nos. 43, 44, 49, 57, 58, 60, 61, 62, 63, 64) will issue separately.

## II. LEGAL STANDARD

### A.    *Rule 12(c) Motion for Judgment on the Pleadings*

Pursuant to Rule 12(c), a party may move for judgment on the pleadings after the pleadings close, but early enough not to delay trial. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as motions to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 600 (2008).

The Court must therefore evaluate whether Garza's First Amended Complaint states a legally cognizable claim. Fed. R. Civ. P. 12(b)(6); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002). To do this, the Court must accept the truth of any well-pleaded factual allegations and draw all reasonable inferences in Garza's favor. *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306 (5th Cir. 2021). The Court's analysis is limited to the pleadings and attachments thereto. *Webb v. City of Dallas, Tex.*, 314 F.3d 787, 790 (5th Cir. 2002), *reh'g en banc denied sub nom. Ann Tension Hereford Webb v. City of Dallas, TX*, 61 F. App'x 123 (5th Cir. 2003); *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

A complaint may be deficient by failing to meet Rule 8(a)'s pleading standards. Rule 8(a) requires pleadings seeking relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) does not require "detailed factual allegations," but it demands more than conclusory recitations of legal elements or "naked assertions devoid of further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Such "threadbare recitals" are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678.

Rule 8(a) does not impose a probability requirement, and courts must be mindful of

speculating on the likelihood of success on the merits at the pleadings stage. *Id.*; *Twombly*, 550 U.S. at 556; *Priester v. Lowndes Cnty.*, 354 F.3d 414, 418 (5th Cir. 2004), *cert. denied*, 125 S.Ct. 153 (2004). Nonetheless, the complaint must raise the entitlement to relief above the speculative level. *Twombly*, 550 U.S. at 555. This requires sufficient factual matter by which a court may draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. In other words, the plaintiff must plead facts that go beyond mere consistency with a defendant's liability; the prospect that a defendant has acted unlawfully must be *plausible*, not merely possible. *Id.*

Dismissal for failure to state a claim is also appropriate "[w]hen a successful affirmative defense appears on the face of the pleadings." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (quoting *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)); *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). This is because a complaint which plainly cannot overcome an affirmative defense is "essentially self-defeating." *Bell*, 27 F.4th at 320 (quoting *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991)). The pleader's allegations must "reveal beyond doubt" that they "can prove no set of facts that would overcome the defense or otherwise entitle them to relief." *Id.* (internal quotations omitted).

Dismissals for failure to state a claim are with prejudice unless there is any possibility that the complaint's defects might be cured by further factual support.[5] *See Goodley v. Reno*, 81 F.3d 157 (5th Cir. 1996) (per curiam) ("Dismissal *with* prejudice under Rule 12(b)(6) is

---

[5] This result follows from the fact that the Federal Rules of Civil Procedure treat dismissals for failure to state a claim as an adjudication on the merits, and therefore with prejudice. *See* Fed. R. Civ. P. 41(b); *Williams v. Dallas Cnty. Comm'rs*, 689 F.2d 1212, 1215 (5th Cir. 1982), *cert. denied sub nom. Williams v. Dallas Cnty. Sheriff*, 103 S. Ct. 2102 (1983). Indeed, unless a court's order specifies otherwise, dismissals are presumed to be with prejudice. *Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*, 16 F.4th 1144, 1155 (5th Cir. 2021), *cert. denied sub nom. Mandawala v. Ne. Baptist Hosp.*, 143 S. Ct. 89 (2022), *reh'g denied*, 143 S. Ct. 514 (2022).

appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.") (emphasis in original); *Guerrero v. Hauck*, 502 F.2d 579, 580–81 (5th Cir. 1974) (per curiam) (reversing district court's prejudicial dismissal of plaintiff's complaint when amendment could possibly cure pleading's defects).

## III.    DISCUSSION

### A.    *UPS's Rule 12(c) Motion for Judgment on the Pleadings*

UPS raises five dismissal arguments in its Rule 12(c) Motion: (1) Garza has failed to administratively exhaust some of his ADA and TCHRA claims; (2) Garza was not qualified for the promotions for which he applied; (3) some of Garza's ADA and TCHRA claims are time-barred; (4) the federal agency responsible for issuing Garza an occupational license acted arbitrarily and capriciously; and (5) Garza has not plausibly stated claims for failure to promote to non-driver positions or for denying reasonable accommodations. *See* Dkt. No. 33 at 6–7.

As mentioned *supra*, at n.3, Garza has voluntarily abandoned any non-driver hiring or promotion claims. Dkt. No. 37 at 23. Accordingly, Garza's non-driver hiring or promotion claims are subject to dismissal. *See Duncan v. Smith & Nephew, Inc.*, No. 3:19-CV-00392, 2020 WL 6151233, at *6 (S.D. Tex. Oct. 5, 2020) (Edison, J.), *report and recommendation adopted*, No. 3:19-CV-00392, 2020 WL 6152148 (S.D. Tex. Oct. 20, 2020) (Brown, J.); *Thymes v. Gillman Companies*, No. CV H-17-2834, 2018 WL 3025045, at *2 (S.D. Tex. June 18, 2018) (Lake, J.); *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020). The Court will consider the remaining issues in turn.

### 1. *Garza sufficiently exhausted his discrimination and accommodations claims*[6]

Prior to bringing suit in federal court, ADA plaintiffs must first exhaust their administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC") in which they identify the employment practices they wish to challenge.[7] *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996) (per curiam); *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006), *cert. denied sub nom. Pacheco v. Cino*, 127 S. Ct. 299 (2006); *Owens v. Dallas Cnty. Cmty. Coll. Dist.*, 793 F. App'x 298, 300 (5th Cir. 2019) (per curiam). Failure to do so is grounds for dismissal on the merits. *Dao*, 96 F.3d at 789; *see also Gause v. Shanahan*, 801 F. App'x 247, 249 (5th Cir. 2020) (per curiam).

Exhaustion serves the "dual purposes of giving the employer some warning as to the conduct about which the employee is complaining and affording the EEOC and the employer an opportunity to settle the dispute through conciliation." *Benson v. Mary Kay Inc.*, No. 3:06-

---

[6] At the outset, it should be noted that analysis of the administrative exhaustion question requires reference to the underlying administrative charge of discrimination filed by Garza. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996) (per curiam); *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006), *cert. denied sub nom. Pacheco v. Cino*, 127 S. Ct. 299 (2006); *Owens v. Dallas Cnty. Cmty. Coll. Dist.*, 793 F. App'x 298, 300 (5th Cir. 2019) (per curiam). The relevant charge first appears as an exhibit to Garza's Response to UPS's Rule 12(c) Motion. Dkt. No. 37-1. When on a Rule 12(c) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "[t]here is nothing improper" about a court considering "the content of briefing that supports or opposes" a Rule 12(c) motion in deciding such a motion. *See Turnage v. McConnell Techs.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam). Briefs and oral arguments connected to the Rule 12(c) motion are not outside the pleadings so long as they do not effectively amend the live complaint. *See id.*; *Mun. Employees' Ret. Sys. of Michigan v. Pier 1 Imports, Inc.*, 935 F.3d 424, 436 (5th Cir. 2019) (citing *Lohr v. Gilman*, 248 F. Supp. 3d 796, 810 (N.D. Tex. 2017)). Because Garza attaches the underlying administrative charge to his briefing in opposition to UPS's Rule 12(c) Motion and the charge does not substantively change the nature of Garza's claims articulated in his First Amended Complaint, the Court considers it properly before it at the pleadings stage.

[7] Throughout its discussion of relevant ADA legal principles, the Court's cited authorities will sometimes involve claims under the ADA and, other times, claims under Title VII of the Civil Rights Act. 42 U.S.C. § 2000e, *et seq.* The Fifth Circuit has recognized that the ADA and Title VII are "part of the same broad remedial framework" and "subject to similar analysis." *Miller v. Pub. Storage Mgmt., Inc.*, 121 F.3d 215, 218 (5th Cir. 1997). Consequently, caselaw interpreting the ADA and Title VII are interchangeable. *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010) (noting that Title VII and the ADA contain "anti-discrimination and anti-retaliation provisions that are indistinguishable" from each other); *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 14 n.13 (D.D.C. 2023) (holding that cases interpreting the Rehabilitation Act and ADA are interchangeable and that "this fungibility between statutes also generally extends to cases interpreting the Rehabilitation Act and Title VII.").

CV-1911R, 2007 WL 1719927, at *1 n.1 (N.D. Tex. June 11, 2007) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)); *see also Smith v. AT&T Mobility Servs., L.L.C.*, No. 21-20366, 2022 WL 1551838, at *3 (5th Cir. May 17, 2022) (per curiam) ("Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation.") (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 198 (2008)).

An ADA action is generally limited to the scope of the plaintiff's EEOC charge and the EEOC investigation that can reasonably be expected to grow out of it. *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 445 (S.D. Tex. 2010) (Harmon, J.) (citing *Pacheco*, 448 F.3d at 789); *McClain*, 519 F.3d at 274. The Court will construe Garza's administrative charge in the "broadest reasonable sense" and engage in a "fact-intensive analysis" of the contentions contained therein. *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018) (per curiam); *Pacheco*, 448 F.3d at 789. The essential element for determining the scope of exhaustion is "the "factual statement contained" in the charge. *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 379 (5th Cir. 2019) (per curiam) (quoting *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)).

These same principles apply to administrative exhaustion of claims under the TCHRA. *See Williams*, 717 F. App'x at 444–45 ("Because TCHRA parallels the language of the ADA, Texas courts follow ADA law in evaluating TCHRA discrimination claims.") (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285–87 (5th Cir. 2004), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (en banc)); *see also Sw. Convenience Stores, LLC v. Mora*, 560 S.W.3d 392, 400–01 (Tex. App.—El Paso 2018, no pet.) (describing substantially similar exhaustion principles for TCHRA claims as under the ADA and Title VII).

Garza's charge of discrimination was dual-filed with the EEOC and Texas Workforce Commission ("TWC") on June 15, 2021. Dkt. No. 11 at 2. As relevant here, Garza's First Amended Complaint claims, under both the ADA and TCHRA, that UPS: (1) denied and continues to deny him promotion opportunities to driver and other full-time positions; (2) refused him reasonable accommodations to work as a driver or other full-time positions; and (3) denied and continues to deny him notice and information about bid and promotion opportunities. *Id.* at 4, 6–9. UPS argues that "[t]he only claim Garza exhausted is that UPS failed to promote him to a driver position in February 2021 and before" because Garza's administrative charge "complains only about UPS's failure to promote him to a driver position in February 2021 and before." Dkt. No. 33 at 11–12.

Although Garza, in his charge, mentions applying for promotions throughout his employment and "most recently in January or February 2021," he asserts in the very next sentence that UPS "has denied and *continues to deny* me a promotion and refused me reasonable accommodations to work as a driver." Dkt. No. 37-1 at 2 (emphasis added). Additionally, Garza throughout the charge characterizes the nature of UPS's alleged discrimination as ongoing; Garza also checked the box labeled "continuing action." *See generally id.*

Certainly, these factual contentions would have sufficed to put UPS on notice that Garza was complaining of ongoing discriminatory conduct continuing beyond February 2021 and there is little doubt the EEOC and TWC would have reasonably tailored their investigation accordingly. In a nearly identical factual scenario, the United States District Court for the Middle District of Florida rejected UPS's exhaustion argument.[8] *See*

---

[8] Indeed, the Middle District of Florida chided UPS that "a cursory examination of the description of discriminatory conduct charge," which alleged discriminatory conduct "since July 2020," should have led UPS to abandon its argument that the plaintiff had not exhausted claims of discrimination beyond that date. *Bemesderfer v. United Parcel Serv., Inc.*, No. 6:22-CV-270-PGB-EJK, 2023 WL 8004428, at *2 (M.D. Fla. Nov. 17, 2023). It is no different here.

*Bemesderfer v. United Parcel Serv., Inc.*, No. 6:22-CV-270-PGB-EJK, 2023 WL 8004428, at *2 (M.D. Fla. Nov. 17, 2023). Garza, therefore, has exhausted his claim that UPS has failed, and continues to fail, to promote him to driver positions.

UPS also argues that Garza has not exhausted his claims regarding failure to promote to "other full-time positions." Dkt. No. 33 at 13; Dkt. No. 11 at 3, 6–9. To the extent these "other" full-time positions are non-driver positions, Garza's voluntary abandonment of non-driver promotion claims forecloses the need for analysis. Dkt. No. 37 at 12 n.2, 19 (explaining that Garza "does not respond to UPS' argument on whether he exhausted discrimination with regard to discriminatory denial of non-driver positions."). Furthermore, as discussed above, Garza has exhausted his administrative remedies related to driver promotion claims.

Finally, UPS argues that Garza has failed to administratively exhaust his failure to accommodate claims related to non-driver positions. Dkt. No. 33 at 15. The underlying administrative charge asserts that Garza was then-employed as a Preloader. Dkt. No. 37-1 at 2. At times, the charge suggests a narrow focus on driver positions. For example, Garza asserts that UPS "refused [him] reasonable accommodations to work as a driver." *Id.* Elsewhere, Garza more generally asserts UPS denied him notice and information about "promotion opportunities" and "reasonable accommodations," which Garza argues apprised UPS that he was complaining of a denial of accommodations "in his current position." *Id.*; Dkt. No. 37 at 12.

The Court agrees with Garza that the charge's contentions are sufficient to exhaust his Preloader accommodations claims. Administrative exhaustion is an affirmative defense. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019). Therefore, the critical inquiry is whether it is *beyond doubt* that the charge is insufficient to show exhaustion. *Bell*, 27 F.4th at 320. Notwithstanding Garza's isolated reference to driver accommodations, since Garza complains

generally of UPS failing to provide reasonable accommodations and promotion information and asserted that he was then-employed as a Preloader, the charge can reasonably be read to encompass Preloader accommodations claims too.

To the extent UPS also argues that Garza is precluded from pursuing failure to accommodate claims for driver positions, the Court disagrees. Garza's charge complains of UPS's failure to provide reasonable accommodations because of Garza's deafness, which he characterizes as a "continuing action." Dkt. No. 37-1 at 1–2. UPS argues that Garza fails to "include the date, place, and circumstances" of the alleged denial of requested accommodations. Dkt. No. 33 at 15 (quoting Tex. Labor Code Ann. § 21.201(c)(2)). But Garza alerted UPS, the EEOC, and the TWC that "since 2012…and most recently in January or February 2021," "at United Parcel Service in Brownsville, Texas," UPS refused Garza reasonable accommodations "to work as a driver" including "the opportunity to even hear about promotion opportunities…because of [Garza's] disability, deafness." Dkt. No. 37-1 at 2 (cleaned up).

Therefore, Garza has exhausted his administrative remedies and is entitled to judicial review of his ADA and TCHRA claims that UPS: (1) failed, and continues to fail, to promote him to driver positions; (2) refused him reasonable accommodations to work as a driver and Preloader; and (3) denied him notice and information of driver and Preloader bid and promotion opportunities. UPS's motion for judgment on the pleadings as to Garza's failure to administratively exhaust his claims should be denied.

### 2. *Garza was not qualified to be a driver before June 2022*

The ADA prohibits covered employers from discriminating against a "qualified individual" on the basis of disability. 42 U.S.C. § 12112(a). It is thus a prerequisite to relief under the ADA that Garza be qualified to be a driver. *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). And because federal law prescribes the relevant qualifications

(*Williams v. J.B. Hunt Transp., Inc.*, 132 F. Supp. 3d 858, 867 (S.D. Tex. 2015) (Harmon, J.), *aff'd*, 826 F.3d 806 (5th Cir. 2016); 49 U.S.C. § 31102(a), (b)), those standards must be met to pursue parallel employer discrimination claims under state law. *See United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016) ("Under the doctrine of federal preemption, a federal law supersedes or supplants an inconsistent state law or regulation.").

A qualified individual is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 762 (5th Cir. 1996) (quoting 42 U.S.C. § 12111(8)). In assessing an employee's qualification for a job, courts consider: (1) whether the individual satisfies the prerequisites for the position such as having the "skill, experience, education and other job-related requirements;" and (2) whether the individual can perform the essential functions of the job with or without reasonable accommodation. *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 n.14 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1050 (1998); 29 C.F.R. § 1630.2(m). Occupational licenses and certifications required by law count as prerequisites. *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 812 (5th Cir. 2016); *see also* 29 C.F.R. Pt. 1630, App. § 1630.2(m).

Some UPS driver positions involve the operation of Commercial Motor Vehicles ("CMVs"). Dkt. No. 11 at 5; Dkt. No. 33 at 8–9. Congress has delegated power to the Secretary of Transportation to prescribe qualifications and adopt regulations, orders, and standards for CMV operators. *J.B. Hunt*, 132 F. Supp. 3d at 867; 49 U.S.C. § 31102(a), (b). Under that authority, the Department of Transportation ("DOT"), through the Federal Motor Carrier Safety Administration ("FMCSA"), has promulgated regulations setting out the "minimum qualifications" for those who operate CMV's on behalf of motor carriers. *J.B. Hunt*, 132 F. Supp. 3d at 867; 49 C.F.R. § 391.1.

Persons may not operate CMV's without being "medically certified as physically

qualified to do so." *J.B. Hunt*, 132 F. Supp. 3d at 867; 49 C.F.R. §§ 391.11(a), 391.41(a)(1)(i). To be physically qualified to drive a CMV, the individual must meet specific physical standards (receive a "DOT card"), achieve a level of hearing acuity assessed under the "forced whisper" test, and comply with a medical examination. *J.B. Hunt*, 132 F. Supp. 3d at 868; 49 C.F.R. § 391.41(a)(3)(i), (b)(11). If the individual cannot meet one of the physical standards, including passing the forced whisper test, he must obtain an FMCSA exemption from that physical standard to remain qualified. 49 U.S.C. § 31315(b)(1); 49 C.F.R. § 391.41(a)(3)(ii).

Garza alleges that he first received a DOT card and FMCSA hearing exemption qualifying him to drive CMVs in interstate commerce in June 2022 and that he is, therefore, "qualified for the position." Dkt. No. 11 at 1, 4–5. UPS argues that Garza was not qualified to be a driver at any time prior to receiving his DOT card. Dkt. No. 33 at 16. The Court agrees with UPS.

Garza's argument places undue emphasis on the employee's hypothetical ability to perform essential job functions, notwithstanding failure to satisfy other legal prerequisites. According to Garza, "if an employee is not…able to pass or obtain a[n]…exam or license which is required for performance of an essential job function, their inability to perform that…function may render them not qualified, making the real inquiry: *if they are able to do so with or without reasonable accommodation*."[9] Dkt. No. 37 at 13 (emphasis in original). However, this position directly flouts Fifth Circuit precedent.

---

[9] Garza relies exclusively on cases outside the Fifth Circuit applying equitable considerations in the qualification analysis. Dkt. No. 37 at 13–14; *see also Hatter v. WMATA*, 244 F. Supp. 3d 132, 136 (D.D.C. 2017) (holding plaintiff made a prima facie discrimination claim despite his lack of a DOT medical certification because "Defendant has not presented any evidence that Plaintiff could not obtain this certification, and there is no evidence the Plaintiff could not" perform the necessary job functions); *Leisenv. City of Shelbyville*, 153 F.3d 805, 808 (7th Cir. 1998) (holding that plaintiff was not qualified to be a firefighter after *repeated* failed attempts to obtain a paramedic certification *over several years*) (emphasis added); *Baert v. Euclid Beverage, Ltd.*, 954 F. Supp. 170, 172–73 (N.D. Ill. 1997) (holding that where federal regulations "*absolutely disqualifi[ed]*" plaintiff from being able to obtain a commercial driver's license, a prerequisite to being a truck driver, the plaintiff was not qualified) (emphasis added), *rev'd on other grounds*, 149 F.3d 626 (7th Cir. 1998).

Because having a DOT card is a legal prerequisite to driving a CMV, the law in this Circuit is that an employer's refusal to permit an employee who lacks a DOT card to drive CMVs in interstate commerce does not violate disability discrimination laws. *See J.B. Hunt*, 826 F.3d at 811–12; *Barreto v. Cont'l Express, Inc.*, No. CIV A. H-05-0290, 2006 WL 1715344, at *5 (S.D. Tex. June 20, 2006) (Rosenthal, J.). Indeed, under the controlling two-step qualification inquiry, courts should not reach the question of the employee's ability to perform essential job functions unless the employee first satisfies the prerequisites for the position. *See E.E.O.C. v. Texas Bus Lines*, 923 F. Supp. 965, 970–71 (S.D. Tex. 1996) (Stacy, J.) ("The *first* step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate...*licenses*...") (emphasis added) (quoting 29 C.F.R. § 1630.2(m)).

Even the most favorable case within this Circuit that the Court has identified does not support Garza's qualification argument. In *E.E.O.C. v. Texas Bus Lines*, the court declined to hold a bus driver candidate unqualified when their inability to pass the DOT examination was due to the physician's and employer's "perceived and mistaken belief that [the plaintiff] was disabled as a result of her obesity." 923 F. Supp. at 971. *Texas Bus Lines* thus represents a rare and narrow equitable exception for an otherwise disqualified driver candidate when the candidate fails the DOT examination because of a physician's or employer's erroneous belief that the candidate's condition is disqualifying as a matter of law.

Here, Garza asserts that UPS repeatedly told him that he was not eligible to be a driver because he could not pass the DOT medical exam despite DOT regulations permitting an exemption from the ordinary hearing requirements. Dkt. No. 11 at 4. In his Response to UPS's Rule 12(c) Motion, Garza claims that these representations were the "only reason" why he did not apply for an exemption earlier. Dkt. No. 37 at 15. Yet, Garza does not claim that UPS misinformed him about his ability to pass the DOT examination or that any medical examiner

erroneously failed Garza when he should have passed; he argues merely that UPS's true statement of the law[10] was misleading in light of potentially available regulatory exemptions.[11]

In his Response to UPS's Rule 12(c) Motion, Garza alleges that UPS allows driver candidates to obtain hearing exemptions during onboarding and, presumably, does not require them to already have one at the time they apply for the job.[12] Dkt. No. 37 at 16–17. Garza argues that if UPS applied this policy to him, he would have acquired a DOT card with a hearing exemption in due course and have been qualified to be a driver by the time he assumed the position. *Id.* at 17–18. Still, whatever UPS's process for hiring drivers, *the law* prohibits persons who are not DOT certified from driving CMVs. *See* 49 C.F.R. §§ 391.11(a), 391.41(a)(1)(i), (a)(3), (b)(11); 49 U.S.C. § 31315(b)(1). Accordingly, as Garza's own account of UPS's hiring process indicates, UPS in no case hires drivers who cannot obtain a DOT card. Dkt. No. 37 at 17. UPS's process for screening driver candidates who require hearing exemptions does not bear on Garza's lack of legal qualification to drive CMVs.

Garza does not come within the narrow exception recognized in *Texas Bus Lines*, and the Court can find no other broader exception under which Garza can avoid the consequences

---

[10] Even if UPS in fact told Garza "that he is not eligible for a Driver position because he cannot pass the Department of Transportation ("DOT") medical exam," that statement is true. Dkt. No. 11 at 4. A person who cannot pass the DOT exam is legally prohibited from operating a CMV unless they obtain a hearing exemption. *See* 49 C.F.R. §§ 391.11(a), 391.41(a)(1)(i), (a)(3), (b)(11); 49 U.S.C. § 31315(b)(1).

[11] Garza admits that UPS supervisors did inform him of the availability of an FMCSA exemption to apply for driver positions. Dkt. No. 11 at 4. Garza accuses UPS of allegedly refusing to assist him in navigating the exemption process after repeated requests for help. *Id.* However, Garza has not otherwise shown that UPS was obligated to render assistance. To the extent Garza suggests that UPS's alleged failure to assist him in the exemption process is a failure to provide accommodations, the Court disagrees. Because a precondition to a successful accommodations claim is that the individual is qualified (*see* 42 U.S.C. § 12112(b)(5)(A); Tex. Labor Code Ann. § 21.128(a)), it would be anomalous to hold that an unqualified individual is entitled to the employer's assistance to become qualified as a reasonable accommodation. *See Thornton v. Providence Health Sys.-Oregon*, No. 05-40-KI, 2005 WL 3303944, at *4 (D. Or. Dec. 5, 2005) (quoting EEOC ADA enforcement guidance that "There is no obligation for the employer to assist the individual to become qualified.").

[12] Garza cites to various sources outside the pleadings to as evidence of UPS's standard procedure for processing hearing exemptions. *See* Dkt. Nos. 37-3, 38. As Garza notes, for the Court to accept this material at this stage would require the Court to convert UPS's Rule 12(c) Motion to one for summary judgment. Fed. R. Civ. P. 12(d). The Court need not do this because, even if Garza's allegations about UPS's exemption procedure were true, Garza is still not entitled to relief.

of not having a DOT card before June 2022. For that reason, Garza plainly cannot recover for any driver-related claims arising before June 2022. Garza's driver promotion and accommodations[13] claims arising before June 2022 are, therefore, subject to dismissal.

### 3. Garza's Preloader accommodations claims arising before August 19, 2020, are time-barred

Both the ADA and TCHRA require that an administrative charge of employment discrimination be made within a certain timeframe of the occurrence of the allegedly discriminatory conduct. When, as here, the plaintiff's claim is dual-filed with the EEOC and a state agency, the plaintiff has 300 days from the date of the conduct to file their EEOC charge. *Owens*, 793 F. App'x at 301 (citing 42 U.S.C. § 2000e-5(e)(1)). The TCHRA, by contrast, requires plaintiffs to file their TWC charge within 180 days. *Mora*, 560 S.W.3d at 400 (citing Tex. Labor Code Ann. § 21.202(a)). Failure to comply with the TCHRA filing deadline is a jurisdictional bar to suit (*Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513–14 (Tex. 2012)); failure to comply with the ADA deadline, while not jurisdictional, is still grounds for dismissal. *Davis*, 893 F.3d at 306; *Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 F. App'x 359, 365 (5th Cir. 2011) (per curiam).

The parties disagree on when Garza dual-filed his administrative charges: UPS claims Garza filed his charges on June 29, 2021 (Dkt. No. 33 at 16); Garza asserts it was June 15, 2021. Dkt. No. 11 at 2. At the pleadings stage, the Court is bound to believe Garza's version of events. *White*, 996 F.3d at 306. UPS seeks dismissal of all claims arising more than 300 days prior to Garza's administrative charge filing date. Dkt. No. 33 at 16–17. Taking June 15, 2021,

---

[13] As explained *supra*, at n.11, being qualified is a precondition to prevail on an accommodations claim under the ADA and TCHRA. *See* 42 U.S.C. § 12112(b)(5)(A); Tex. Labor Code Ann. § 21.128(a); *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020), *cert. denied sub nom. Clark v. Inco Champion Nat'l Sec., Inc.*, 141 S. Ct. 662 (2020); *Hagood v. Cnty. of El Paso*, 408 S.W.3d 515, 524 (Tex. App.—El Paso 2013, no pet.) (articulating substantially similar elements for accommodations claims under the TCHRA). Garza's lack of qualification to be a driver before obtaining his DOT card is thus fatal to his driver accommodations claims.

as the baseline, 300 days prior was August 19, 2020.[14] As explained *supra*, at p. 14.—15, Garza's pre-June 2022 driver promotion and accommodation claims are not cognizable because he was not qualified; Garza's Preloader accommodations claims are his only live pre-June 2022 claims. Thus, the Court will analyze only these claims for timeliness.

Garza argues that any live claims accrued before August 19, 2020, are not time-barred under the continuing violation doctrine, under which a defendant may still be liable for continuing unlawful conduct which precedes a limitations period. *Rendon v. AT & T Techs.*, 883 F.2d 388, 395 (5th Cir. 1989); *Drew v. City of Houston*, 679 S.W.3d 779, 785 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (recognizing a substantially similar continuing violation doctrine applicable to TCHRA discrimination claims); Dkt. No. 37 at 18. UPS argues that the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan* forecloses application of the continuing violation doctrine to the present facts. 536 U.S. 101, 105 (2002); Dkt. No. 40 at 1–3. *Morgan* generally held that discrimination charges alleging "discrete acts" must be filed within the statutory limitations period. *Morgan*, 536 U.S. at 114.

In response, Garza frames his claims as based on UPS's allegedly discriminatory "policy or practice," which Garza maintains remain subject to the continuing violation doctrine post-*Morgan*. Dkt. No. 37 at 18–19 (citing Dkt. No. 11 at 7). The policy Garza refers to, however, allegedly operates to prevent the *hiring and promotion* of deaf driver and non-driver candidates. Dkt. No. 11 at 5, 7; *see also* Dkt. No. 37 at 18 (describing UPS's policy as

---

[14] A court may *sua sponte* take judicial notice of any fact not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (c)(1); *see also Longoria v. Thaler*, No. CIVA C-09-75, 2010 WL 986486, at *2 (S.D. Tex. Mar. 16, 2010) (Jack, J.) ("Courts may take judicial notice under Rule 201(b)(2) of court records, scientific facts, weather records, or historical and geographical data.") (cleaned up); *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012) (per curiam) ("[T]he court may take judicial notice of matters of public record."). Judicial notice is also generally permissible in the context of a Rule 12(c) motion. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002), *reh'g en banc denied*, 62 F. App'x 559 (5th Cir. 2003). Therefore, the Court may judicially notice the date 300 days prior to June 15, 2021. In any case, this is also the date Garza later identifies as the relevant cutoff for limitations purposes. *See* Dkt. No. 37 at 18.

"barring promotion" and "discriminating against deaf drivers based on their disability."). Garza does not allege nor identify any discriminatory UPS policy with respect to granting accommodations for non-driver positions, such as Preloaders. Therefore, UPS's allegedly discriminatory policy provides no basis for avoiding *Morgan*'s application to these facts.

Discrete acts are such that they "put the employee on notice that a cause of action has accrued." *Celestine v. Petroleos De Venezuela SA*, 108 F. App'x 180, 186 n.8 (5th Cir. 2004) [hereinafter *Celestine II*] (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001) [hereinafter *Celestine I*], *reh'g en banc denied*, 275 F.3d 48 (5th Cir. 2001)). The characteristic feature of a discrete act is that its occurrence is identifiable at a specific time. *See Morgan*, 536 U.S. at 115 (explaining that hostile environment claims remain subject to the continuing violation doctrine because the unlawful employment practices "cannot be said to occur on any particular day" and are, thus, not based on discrete acts). A failure to accommodate, therefore, which occurs on the date the employee learns the accommodation was denied (*Ramirez v. City of San Antonio*, 312 F.3d 178, 182 (5th Cir. 2002)) is a discrete act not subject to the continuing violation doctrine. *See Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005) (per curiam); *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 674 (N.D. Tex. 2023), *reconsideration denied*, 347 F.R.D. 155 (N.D. Tex. 2024).

Because Garza's Preloader accommodations claims involve discrete acts, they are time-barred unless charges alleging those acts were filed within the limitations period, which in this case is 300 days from the date of occurrence. Accordingly, because Garza dual-filed his administrative charges on June 15, 2021, Garza's Preloader accommodations claims arising before August 19, 2020, are untimely and subject to dismissal.

### *4. UPS's arbitrary and capricious argument does not warrant dismissing Garza's remaining claims*

UPS seeks dismissal of Garza's claims on the grounds that "[t]he FMCSA acted arbitrarily and capriciously in issuing Garza a hearing exemption." Dkt. No. 33 at 17, 19. It is a standard legal truism that a federal agency's authority to act is limited by the power Congress has delegated to it. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Congress, via the Administrative Procedure Act ("APA"), enables litigants to challenge agency action in specific circumstances. *See* 5 U.S.C. §§ 702, 704. Where, as here, Congress has not specified any other standard of review in the agency's enabling statute, courts must "hold unlawful and set aside agency action" which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 329 (D.C. Cir. 2011) ("[I]f an action is subject to review under the APA…[it is] subject to arbitrary and capricious review.").

There are at least three distinct ways to challenge agency action as exceeding its authority: (1) by challenging the quality of the agency's logical reasoning (*see Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024) (the agency must articulate "a satisfactory explanation for its action…including a rational connection between the facts found and the choice made.") (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))); (2) by challenging the facts on which the agency relied in making its decision (*see State Farm*, 463 U.S. at 43 (an agency acts arbitrarily and capriciously when it relies on "factors which Congress has not intended it to consider" or "entirely [fails] to consider an important aspect of the problem.")); or (3) by challenging the agency's interpretation of applicable law. *See Jaimez-Revolla v. Bell*, 598 F.2d 243, 246 (D.C. Cir. 1979) (per curiam) (an agency acts arbitrarily and capriciously if its "decision is based on an improper understanding of the law."). UPS raises all three challenges. *See* Dkt. No. 33 at 17–

21 (arguing the FMCSA failed to consider the level of safety achieved by the forced whisper test, failed to explain the probative value of Garza's personal driving record on his ability to safely operate a CMV, and improperly interpreted the enabling statute in issuing Garza a hearing exemption). However, for the following reasons, UPS's arbitrary and capricious arguments are unmeritorious.

First, as Garza correctly observes, the APA may not be invoked against a private party. Dkt. No. 37 at 21; *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 807 (2024) ("[The APA] authorizes persons injured by agency action to obtain judicial review *by suing the United States or one of its agencies, officers, or employees*.") (emphasis added). UPS insists that it is not asserting an APA claim against Garza, and "has not sought any remedies directly under the APA," but rather invokes APA-style language as a defense to Garza's claim that he was qualified to be a driver. Dkt. No. 40 at 7. But UPS's argument here is unpersuasive.

UPS clearly argues that the FMCSA's exempting Garza from the forced whisper test was arbitrary and capricious and, therefore, "has no binding effect," *i.e.*, must be held unlawful and set aside.[15] Dkt. No. 33 at 17; 5 U.S.C. § 706(2). And since the FMCSA issued Garza an exemption pursuant to notice and comment procedures (Dkt. No.33 at 9; 49 U.S.C. §§ 31315(b)(6), 31317), that action presumptively has "the force of law." *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) ("Substantive rules have the force of law, meaning

---

[15] UPS relies on *Chevron U.S.A. Inc. v. Echazabal* for the proposition that an APA-style defense may be made against a private party. 536 U.S. 73 (2002). But that case did not involve a defendant raising an arbitrary and capricious defense against a private ADA plaintiff, as here; the defendant employer in fact relied on EEOC regulations in support of its challenged employment decisions. *Id.* at 79. And the Supreme Court, in any case, reversed the Ninth Circuit's judgment that the regulations at issue were arbitrary and capricious. *Id.* at 78. Thus, *Echazabal* does not show what UPS needs to show here: that a defendant may successfully raise an APA defense against an ADA plaintiff without impleading the relevant agency whose regulations are at issue.

that they bind the regulated public. The APA requires that they be preceded by notice and comment."), *as revised* (Nov. 25, 2015), *aff'd by an equally divided court*, 577 U.S. 1101 (2016), *reh'g denied*, 137 S.Ct. 285 (2016); *Nat'l Ass'n of Manufacturers v. United States Sec. & Exch. Comm'n*, 631 F. Supp. 3d 423, 429 n.26 (W.D. Tex. 2022) ("[I]f an agency takes an action that ordinarily requires notice and comment, that action by definition constitutes final agency action," which constitutes " a binding norm.") (quoting *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 441 (5th Cir. 2019) and *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006)). Because the FMCSA's exemption determination otherwise has the force of law, the only way for UPS to avoid compliance is to have the FMCSA's decision invalidated. UPS attempts to do so by arguing the FMCSA acted arbitrarily and capriciously, thereby invoking the APA to seek relief against Garza, a private party.[16]

---

[16] Whether a party who makes an arbitrary and capricious challenge to agency decision-making asserts a claim directly under the APA or instead invokes inherent judicial authority is a complicated question that can take the Court far afield of the current dispute. But some general observations support the conclusion that UPS's challenge invokes the APA itself. While the APA does acknowledge the authority of the federal courts to invalidate agency action "contrary to constitutional right, power privilege or immunity," (5 U.S.C. § 706(2)(B)) or "in excess of statutory jurisdiction, authority, or limitations;" (5 U.S.C. § 706(2)(C)) it has been long understood that these are inherent powers of judicial review which do not depend on the APA. *See Padula v. Webster*, 822 F.2d 97, 101 (D.C. Cir. 1987) ("[E]ven where agency action is committed to agency discretion by law, review is still available to determine if the Constitution has been violated.") (internal quotations omitted); *Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (observing that even when the APA does not apply, "judicial review is available when an agency acts ultra vires, or outside of the authority Congress granted…on the longstanding principle that if an agency action is unauthorized by the statute under which the agency assumes to act, the agency has violated the law and the courts generally have jurisdiction to grant relief.") (internal quotations and citations omitted), *reh'g en banc denied*, 2022 WL 1081034 (D.C. Cir. 2022); *Texas v. United States*, 809 F.3d 134, 166 (5th Cir. 2015), *as revised* (Nov. 25, 2015) (explaining that the occurrence of agency enforcement action is sufficient to permit judicial review for observance of statutory authority), *aff'd by an equally divided court*, 577 U.S. 1101 (2016), *reh'g denied*, 137 S.Ct. 285 (2016); *Bd. of Pub. Instruction of Taylor Cnty., Fla. v. Finch*, 414 F.2d 1068, 1074 (5th Cir. 1969) ("[A]n inquiry to determine if the agency has exceeded its statutory power is a constitutional obligation of the courts."). No similar precedent clearly recognizes an inherent judicial power to invalidate and set aside arbitrary and capricious agency action. And even the inherent power to invalidate ultra vires agency action is extremely limited. *See Am. Clinical Lab'y Ass'n v. Azar*, 931 F.3d 1195, 1208 (D.C. Cir. 2019) (holding that agency action must amount to a "patent violation of agency authority" to be ultra vires); *see also Briscoe v. Bell*, 432 U.S. 404, 407–09 (1977) (approving of the district court's review of the "narrowly defined," "pure legal question" of whether executive officials correctly interpreted a federal statute). It is thus far from clear, if not unlikely, that the Court has the power to invalidate the FMCSA's exemption determination as arbitrary and capricious except under the APA which, for the reasons explained, it may not do against a private party.

Second, the Court has doubts that UPS has standing to raise an arbitrary and capricious defense against Garza. The federal judicial power is limited to distinct "Cases" and "Controversies." *See* U.S. Const. art. III. It is not "an unconditioned authority to determine the constitutionality of legislative or executive acts" and "is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) (quoting *Chicago & G.T. Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892)).

Standing is a "core component" of the Article III case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also* U.S. Const. art. III. "The irreducible constitutional minimum" for standing is: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) a "fairly traceable" causal connection between the defendant's challenged action and the injury complained of; and (3) a "likely," not merely "speculative," possibility the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal citations and quotations omitted). The Court must raise standing issues, when necessary, *sua sponte*. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331–32 (5th Cir. 2002), *reh'g en banc denied*, 48 F. App'x 482 (5th Cir. 2002), *cert. denied sub nom. Ford v. Aetna U. S. Healthcare, Inc.*, 123 S. Ct. 1574 (2003).

The party seeking to invoke federal jurisdiction has the burden of proving standing. *See United States v. Hays*, 515 U.S. 737, 743 (1995). Because the plaintiff is normally the one seeking the court's jurisdiction, the burden ordinarily falls on them. *United States v. Dunifer*, 997 F. Supp. 1235, 1239 (N.D. Cal. 1998), *aff'd on other grounds*, 219 F.3d 1004 (9th Cir. 2000); *Louisiana by & through Landry v. Biden*, 64 F.4th 674, 680 (5th Cir. 2023). However, because "there can be no live controversy without at least two active combatants," both parties' standing must be inquired into under Article III. *Goldin v. Bartholow*, 166 F.3d 710,

719 (5th Cir. 1999) (quoting *Martinez v. Winner*, 800 F.2d 230, 231 (10th Cir. 1986)).

When a defendant raises an affirmative defense, they seek the jurisdiction of the court just as a plaintiff does in their case-in-chief. *See United States v. Neset*, 10 F. Supp. 2d 1113, 1116 (D.N.D. 1998), *aff'd*, 235 F.3d 415 (8th Cir. 2000), *cert. denied*, 122 S. Ct. 61 (2001); *Wilson v. Est. of Burge*, 667 F. Supp. 3d 785, 884 (N.D. Ill. 2023) (collecting cases supporting that a defendant raising an affirmative defense must establish standing); *Dunifer*, 997 F. Supp. at 1239 (collecting cases in which defendants lacked standing to raise as-applied constitutional defenses). As "standing is not dispensed in gross," UPS must demonstrate it has standing specifically to press an arbitrary and capricious defense and obtain relief thereunder. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

UPS's arbitrary and capricious defense poses two standing issues: injury and causation. Economic injury is generally a cognizable harm for standing purposes. *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022). Thus, it would be sufficient to show injury that the FMCSA's decision to exempt Garza from the forced whisper test requires UPS to incur an economic detriment, such as to hire Garza and pay him wages. But that is not what the FMCSA exemption does; it merely represents the FMCSA's determination that the exemption "is likely to achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained in the absence" of the exemption. 49 U.S.C. § 31315(b)(1). The exemption does not require UPS to hire Garza, or incur any other injury, but merely certifies Garza's satisfaction of the applicable physical qualification standards. Because UPS remains free to deny Garza employment on any other legitimate, lawful basis, the prospect that UPS will incur injury from the FMCSA exemption is purely conjectural and within UPS's control,[17] *i.e*, insufficient to show injury in fact. *Lujan*, 504 U.S. at 560; *see also Animal Legal*

---

[17] Indeed, as Garza alleges and UPS admits, bids for driver positions are approved based on a seniority system, a system of UPS's own making. Dkt. No. 11 at 4; Dkt. No. 12 at 3.

*Def. Fund, Inc. v. Espy*, 23 F.3d 496, 499–501 (D.C. Cir. 1994) (holding microbiologist demonstrated no "certainly impending" injury and lacked standing based on contentions that animal welfare regulations would "require" her to perform additional research, a choice that was "wholly within her control.").

Alternatively, causation examines whether the injury complained of is fairly traceable to the "*action of the [opposing party].*" *Lujan*, 504 U.S. at 560 (emphasis added). When the injury complained of is the result of acts by some absent, independent third party, standing is substantially more difficult to establish. *See id.*; *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024), *cert. denied*, No. 24-792, 2025 WL 889158 (U.S. Mar. 24, 2025). To the extent UPS's injury is self-inflicted, causation cannot exist (*Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019)); to the extent any cognizable injury is due to actions by federal agencies not before the Court, causation is precluded unless Garza coerced or determined those actions, which UPS has not shown. *See Reule*, 114 F.4th at 367. It is far from clear, then, that UPS suffered any cognizable injury *because of Garza* with respect to the FMCSA's exemption determination.

Third, even if the Court were to reach the substance of UPS's defense, it is not convinced the FMCSA acted arbitrarily and capriciously in granting Garza a hearing exemption. The arbitrary and capricious standard is highly deferential and presumes agency action to be valid; the Court may not substitute its judgment for that of the agency.[18] *State*

---

[18] The Court observes that UPS appears to argue for a substantial expansion of the Supreme Court's holding in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). There, the Supreme Court explicitly overruled *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) and held that courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 412–13. UPS, by contrast, appears to cite *Loper Bright* for the proposition that federal courts must exercise independent judgment in assessing the agency's consideration of data and rationale for its decision. *See* Dkt. No. 33 at 18. This amounts to a displacement of the APA's arbitrary and capricious standard of review with an "independent judgment" standard not countenanced by *Loper Bright*. The Court rejects any invitation to expand *Loper Bright*'s holding to areas subject to traditional arbitrary and capricious review.

*Farm*, 463 U.S. at 43; *Ethyl Corp. v. Env't Prot. Agency*, 541 F.2d 1, 34 (D.C. Cir. 1976), *cert. denied*, 96 S.Ct. 2663 (1976). When a party challenges the agency's logic or assessment of facts, the Court must ask "whether the decision was based on a consideration of the relevant factors and whether there has been a *clear error* of judgment." *See Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quoting *State Farm*, 463 U.S. at 43) (emphasis added).

Garza claims the FMCSA's exemption decision was "based on current medical information and literature" and a "2008 Evidence Report" on "Hearing, Vestibular Function and Commercial Motor Driving Safety," which identified "no studies" specifically examining the relationship between hearing loss and crash risk solely among CMV drivers and found that "evidence from studies of the private driver's license holder population" did not support that hearing impaired individuals were at an increased crash risk. Dkt. No. 11 at 5–6. The FMCSA also explicitly found that granting Garza an exemption "would achieve a level of safety equivalent to, or greater than, the level that would be achieved by complying with [the forced whisper test]."[19] *Id.* at 6.

UPS argues that the FMCSA improperly relied on general population studies that did not examine the level of safety that would be achieved by passing the forced whisper test but instead "considered whether having *any* hearing loss presented greater risks than individuals without hearing loss." Dkt. No. 33 at 19 (emphasis in original). To illustrate, UPS produced the below diagram explaining what UPS argues the FMCSA needed to measure and what was actually measured.

---

[19] Garza's allegations in his First Amended Complaint provide sufficient detail for the Court to conduct an arbitrary and capricious analysis of the FMCSA's exemption decision, but since that decision is a matter of public record, the Court may judicially notice it to corroborate Garza's contentions. *See Bach & Wasserman*, 487 F. App'x at 178 n.2. The FMCSA's official notice as to Garza's exemption decision is consistent with Garza's allegations. *See* Qualification of Drivers; Exemption Applications; Hearing, 87 FR 34747-01 [hereinafter *2022 FMCSA Exemption Decision*].



*Id.* at 20.

However, UPS does not cite any legal authority to support that this diagram accurately reflects the factors FMCSA was bound to consider in making exemption determinations. And several observations undermine UPS's argument that the FMCSA failed to consider the level of safety that would be achieved by meeting the forced whisper standard or engaged in overbroad generalizations. First, the FMCSA explicitly found granting Garza an exemption was likely to achieve a comparable, if not greater, level of safety than under the forced whisper test. Dkt. No. 11 at 6; Qualification of Drivers; Exemption Applications; Hearing, 87 FR 34747-01 [hereinafter *2022 FMCSA Exemption Decision*]. Second, the FMCSA made its determination "[b]ased on an individual assessment of each applicant" to be able to meet the forced whisper test's level of safety. *2022 FMCSA Exemption Decision*. Third, since UPS's diagram illustrates that being "entirely able to hear" is a higher level of hearing acuity than necessary to pass the "forced whisper standard,"  to the extent it is true that the FMCSA compared some deaf persons' level of driving safety against persons who are entirely able to hear, the FMCSA apparently subjected some exemption applicants to a much more stringent hearing standard than legally necessary, which could only have been to the applicants' detriment. *See* Dkt. No. 33 at 20.

No evidence suggests the FMCSA "relied on factors which Congress has not intended it to consider" or "entirely failed to consider an important aspect of the problem," and any conclusions or explanations the FMCSA produced are not "so implausible that [they] could

not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. UPS also takes issue with the FMCSA's reliance on Garza's driving record in a personal vehicle, arguing that absent an explanation for how that information would be probative of Garza's ability to safely operate a CMV, the FMCSA failed to rationally justify its exemption determination. *See* Dkt. No. 33 at 20–21. But, again, the connection between a safe personal driving record and the ability to safely operate a CMV is not so remote or tenuous that disagreement on that point cannot be chalked up to a mere difference in view. Certainly, it is at least reasonable to treat the ability to safely drive some road-based motor vehicles as probative of the ability to safely drive other road-based motor vehicles. Thus, UPS has not clearly shown the FMCSA's factual or logical premises were so deficient to render its exemption determination arbitrary and capricious.

UPS next raises the specter of the FMCSA's interpretation of its enabling statute. Dkt. No. 33 at 21. As recently decided by the Supreme Court, when an agency's interpretation of a statute it administers is in question, courts may not defer to the agency's reading but must independently determine the statute's meaning. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024). UPS argues that the FMCSA is obligated to consider "safety as the highest priority" in accordance with Congress's concern for the "highest degree of safety" in motor carrier transportation. Dkt. No. 33 at 18 (quoting 49 U.S.C. § 113(b)). However, because the forced whisper standard has been validly promulgated pursuant to Congress's delegation of authority to the DOT, and UPS does not dispute this, the forced whisper test establishes, in part, the relevant *means* by which the "highest degree of safety" is to be achieved. 49 U.S.C. § 31102(a), (b); 49 C.F.R. § 391.41(b)(11). Congress' general recitation of purpose is, thus, not of critical importance here.

The other statutory limitation on the FMCSA's exemption granting power is that the exemption must be "likely to achieve a level of safety that is equivalent to, or greater than, the

level that would be achieved absent such exemption." 49 U.S.C. § 31315(b)(1). UPS argues the FMCSA erroneously interpreted this provision to permit it to consider evidence of driving safety among persons with any hearing loss and those without hearing loss, instead of limiting itself to measuring the difference "between the forced whisper standard...and total or near-total deafness." Dkt. No. 33 at 19.

But these arguments contest policy judgments as to what facts are probative of the statutorily mandated level of safety. Consequently, even under *Loper Bright*, they do not present the pure legal issue of statutory interpretation for which courts must exercise independent judgment. *See Loper Bright*, 603 U.S. at 387, 389 (explaining that the Supreme Court does not extend "deference to agency resolutions of questions of *law*," or "pure legal questions.") (emphasis in original); *Scheduled Airlines Traffic Offs., Inc. v. Dep't of Def.*, 87 F.3d 1356, 1361 (D.C. Cir. 1996) (distinguishing between agency decisions involving "complex factual determinations or policy judgments particularly within agencies' expertise" for which arbitrary and capricious review applies and "a pure question of statutory interpretation" for which de novo review is appropriate). And for the reasons explained *supra*, at p. 23–26, UPS's arguments fail under the fallback arbitrary and capricious standard of review.

Fourth, because UPS did not raise the arbitrary and capricious defense in its Answer to Garza's First Amended Complaint (Dkt. No. 12), that defense should be deemed waived. *See* Fed. R. Civ. P. 8(c); *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000), *cert. denied sub nom. Bayou Fleet, Inc. v. Home Place Batture Leasing, Inc.*, 121 S. Ct. 1228 (2001). UPS urges the Court to exercise its discretion to nonetheless accept the defense. Dkt. No. 40 at 8. The Court may accept affirmative defenses raised for the first time after the pleadings close when raised "at a pragmatically sufficient time" so as not to prejudice the plaintiff's ability to respond, (*Giles v. Gen. Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001)), but it is not required do so. *See Alvarez v. NES Glob. LLC*, No. 4:20-CV-01933, 2024 WL

4309989, at *3 (S.D. Tex. Sept. 26, 2024) (Ellison, J.) ("Courts have discretion to excuse noncompliance with Rule 8(c) if that noncompliance did not subject the plaintiff to unfair surprise, but they also have discretion to remedy noncompliance by deeming a defense waived.").

UPS argues that its defense presents "no unfair surprise or prejudice with this purely legal argument." Dkt. No. 40 at 9. Critically, however, the legal argument presented is too opaque; UPS's defense raises significant issues at the frontier of constitutional and administrative law. Thus, the Court instead exercises its discretion to remedy UPS's noncompliance with Rule 8(c) by deeming its arbitrary and capricious defense waived.

Ultimately, the above considerations at least establish that it is not "beyond doubt" that UPS's arbitrary and capricious argument poses an insurmountable successful affirmative defense. *Bell*, 27 F.4th at 320. For those reasons, UPS's motion for judgment on the pleadings as to Garza's exemption from the forced whisper standard being arbitrary and capricious should be denied.

### 5.  *Garza has pleaded enough facts to plausibly support his reasonable accommodations claims*

Lastly, UPS argues that Garza's non-driver promotion and reasonable accommodations claims are not plausibly stated. Dkt. No. 33 at 21–23. Because Garza voluntarily abandoned his non-driver promotion claim, the Court need not address it here. *See* Dkt. No. 37 at 22 n.8. The Court need only focus on whether Garza has pleaded enough facts to support his remaining driver and Preloader accommodations claims.

The ADA's and TCHRA's prohibition on workplace discrimination includes failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability...unless...the accommodation would impose an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A); Tex. Labor Code Ann. §

21.128(a). Garza therefore must show that: (1) he is a qualified individual with a disability; (2) the disability and its consequent limitations were known by the employer; and (3) the employer failed to make reasonable accommodations for the known limitations. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020), *cert. denied sub nom. Clark v. Inco Champion Nat'l Sec., Inc.*, 141 S. Ct. 662 (2020); *see also Hagood v. Cnty. of El Paso*, 408 S.W.3d 515, 524 (Tex. App.—El Paso 2013, no pet.) (articulating substantially similar elements for accommodations claims under the TCHRA).

Because the ADA contemplates an interactive process between the employee and employer to find the best way to accommodate a disability, the employee normally bears the burden of requesting reasonable accommodations. *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009); *Clark*, 952 F.3d at 587–88. Where the employee's "disability, resulting limitations, and necessary reasonable accommodations" are not "open, obvious, and apparent" to the employer, the employee must identify the disability and resulting limitations and suggest the reasonable accommodation. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (quoting *Chevron Phillips*, 570 F.3d at 621). The employee has a right to reasonable, not preferred, accommodations. *Id*. These principles likewise apply to TCHRA accommodations claims. *See Harmon v. Tex. S. Univ.*, 672 S.W.3d 684, 692–95 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (applying federal ADA law to define the scope of the right to reasonable accommodations under the TCHRA).

Garza alleges that he is deaf (Dkt. No. 11 at 3); consequently, he has plausibly stated that he is disabled under state and federal law. *See* 42 U.S.C. § 12102(1)(A), (2)(A) (defining "disability" as having a "physical or mental impairment that substantially limits" a "major life activity," including "hearing" and "communicating"); *see also* 29 C.F.R. § 1630.2(i) (defining "major life activities" as, in part, "hearing" and "communicating"); *Windham v. Harris Cnty., Texas*, 875 F.3d 229, 238 (5th Cir. 2017) (acknowledging deafness as a disability under the

ADA); Tex. Labor Code Ann. § 21.002 (defining "disability" as having an impairment that substantially limits a "major life activity"); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 382 (Tex. 2004) (explaining that "both the federal court decisions interpreting the ADA and the federal administrative regulations regarding the ADA guide our interpretation of the definition of 'disability' contained in chapter 21 [of the Texas Labor Code].").

Garza has also plausibly stated that he is qualified to pursue driver accommodations claims accruing after June 2022. Garza alleges that he obtained a DOT card with a hearing exemption in June 2022, has a driver's license, has a clean driving record, is able to drive safely, and has submitted bid sheets for driver positions throughout his employment. Dkt. No. 11 at 3–5. Although Garza does not address it in as much detail, he nonetheless plausibly states his qualification to pursue Preloader accommodations claims accruing after August 19, 2020. Namely, Garza alleges that he was most recently employed as a Preloader and inquired about opportunities for promotion and signed bid lists for promotion to non-driver full-time positions. *Id*. at 3–4.

Furthermore, an employee's deafness constitutes a prototypical case in which the disability, resulting limitations, and need for accommodations are open, obvious, and apparent even when the employee does not attempt to explain them. *Windham*, 875 F.3d at 238–39. For that reason, Garza falls within the "narrow exception" from the employee's ordinary obligation to request an accommodation. *Id*. at 239; *see also Harmon*, 672 S.W.3d at 692.

But even without that exception, Garza alleges that he and other deaf employees have been denied "certified interpreters, notes, or other effective means of communication for training sessions and safety meetings," that UPS refused him "reasonable accommodations to work as a Driver," and that UPS "denied and continues to deny" him notice and information about bid and promotion opportunities. Dkt. No. 11 at 4, 6. These allegations are sufficient to

plausibly show that Garza's disability, limitations, and requested accommodations were known to UPS.

UPS argues that Garza complains only of a denial of his preferred accommodations. Dkt. No. 33 at 22. Specifically, UPS asserts that since Garza was able to obtain information from the meetings and trainings he claims to have been excluded from, that shows he was effectively accommodated, even if not in the way Garza preferred. *Id.* UPS, however, overlays a specious gloss on Garza's allegations. Garza states he has "been forced to *ask* his supervisors and coworkers for information." Dkt. No. 11 at 6 (emphasis added). He does not "admit[] he has been otherwise able to obtain" the information relayed in the referenced meetings and trainings. Dkt. No. 33 at 22. And UPS cites no authority for the notion that an employee's subsequent remedial measures relieve the employer of its initial obligation to reasonably accommodate the employee's disability.

Moreover, the ADA expressly defines "reasonable accommodation" to include "making existing facilities…readily accessible to and usable by individuals with disabilities," such as through "the *provision of qualified readers or interpreters*, and other similar accommodations." 42 U.S.C. § 12111(9) (emphasis added). This is exactly what Garza claims he requested and was denied. Dkt. No. 11 at 6. By contrast, an accommodation is reasonable under the TCHRA if it assists the employee to perform the job's essential functions. *See Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 91–92 (Tex. App.—Austin 1995, no writ). Garza clearly meets this lower standard by alleging that he requested accommodations to participate in safety and training meetings, which are presumably important for UPS employees' ability to perform their jobs. Dkt. No. 11 at 6.

But more fundamentally, a reasonable accommodation provides "meaningful access" to the benefit or service the employer offers. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (in Rehabilitation Act context); *Brennan v. Stewart*, 834 F.2d 1248, 1261 (5th Cir.

1988); *Van Velzor v. City of Burleson*, 43 F. Supp. 3d 746, 752 (N.D. Tex. 2014) (in ADA context); *Harkless v. Brazoria Cnty., Texas*, No. 3:14-CV-329, 2016 WL 1702595, at *4 (S.D. Tex. Apr. 28, 2016) (Hanks, J.) (same), *reconsideration denied*, 2016 WL 4411552 (2016), *appeal dismissed*, 2016 WL 10677621 (5th Cir. 2016). Garza, by alleging he was forced to receive second-hand briefing on the content of important company meetings, has plausibly stated that he was not provided meaningful access to those discussions.

UPS lastly opposes Garza's claims that UPS failed to notify him of promotion opportunities. Dkt. No. 33 at 21. UPS does not develop any discernible argument on this point aside from merely flagging the issue, while focusing predominantly on Garza's abandoned non-driver promotion claims and his plausibly supported access-to-meetings claims. *See id.* at 21–23. UPS more pointedly addresses the issue in its Reply in Support of its Rule 12(c) Motion, arguing that Garza does not identify any bid or promotion opportunities he missed. Dkt. No. 40 at 9. To the extent UPS raises new arguments for dismissal not captured in UPS's Rule 12(c) Motion, the Court may, and does, deem them waived. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, 516 F. Supp. 3d 633, 652–53 (W.D. Tex. 2021) (declining to consider defendant's arguments to dismiss common law claims when raised for the first time in a reply briefing); *Johnson v. Wells Fargo Bank*, NA, 999 F. Supp. 2d 919, 934 (N.D. Tex. 2014) (declining to consider defendant's dismissal argument, raised for the first time in a reply brief, that plaintiff failed to allege particular facts).

To the extent UPS reiterates arguments with some basis in its Rule 12(c) Motion, the Court believes Garza met his pleading burden. UPS cites no authority to support that Garza was obligated to identify any bid or promotion opportunities missed due to UPS's alleged failure to provide notice. All Garza must do is plausibly show he was qualified with a known

disability, which he has done, and that UPS failed to make reasonable accommodations for the resulting limitations. 42 U.S.C. § 12112(b)(5)(A); Tex. Labor Code Ann. § 21.128(a). Garza alleges UPS denied him the opportunity to hear about promotion opportunities, despite providing notice to non-hearing-impaired employees. Dkt. No. 11 at 4. This is sufficient to plausibly claim Garza was denied the right to meaningfully access bid and promotion information. Therefore, judgment on the pleadings on the issue that Garza has not pleaded sufficient facts to plausibly support his remaining reasonable accommodations claims should be denied.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that UPS's Rule 12(c) Motion be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, it is **RECOMMENDED** that the Court **GRANT** Defendant UPS judgment on the pleadings and **DISMISS WITH PREJUDICE**:

1. Garza's non-driver (Preloader) hiring and promotion claims;

2. Garza's driver hiring, promotion, and accommodations claims arising before June 2022; and

3. Garza's non-driver (Preloader) accommodations claims arising before August 19, 2020.

It is **FURTHER RECOMMENDED** that the Court **DENY** Defendant UPS judgment on the pleadings as to:

1. Garza's driver hiring, promotion, and accommodations claims arising after June 2022; and

2. Garza's non-driver (Preloader) accommodations claims arising after August 19, 2020.

## V.  NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SIGNED** on this **16th** day of **April, 2025,** at Brownsville, Texas.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**