United States District Court
Southern District of Texas
**ENTERED**
June 16, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GABRIEL BRANDON GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No: 1:23-cv-00097 |
| | § | |
| UNITED PARCEL SERVICE, INC., | § | |
| | § | |
| Defendant. | § | |

### MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

Before the Court are Plaintiff Gabriel Brandon Garza's "Motion for Partial Summary Judgment" (Garza's "Motion for Summary Judgment") and Defendant United Parcel Service's ("UPS") "Motion for Summary Judgment" (UPS's "Motion for Summary Judgment") (collectively, the parties' "cross-motions for summary judgment").[1] Dkt. Nos. 43, 49. For the reasons discussed herein, the undersigned recommends that the cross-motions for summary judgment be **GRANTED IN PART,** and **DENIED IN PART**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court herein incorporates the factual and procedural background outlined in the undersigned's April 16, 2025, Report and Recommendation ("April 16 R&R"). Dkt. No. 67 at 1–2. The parties filed objections to the April 16 R&R on April 30, 2025. Dkt. Nos. 68, 69. The Court partially adopted the April 16 R&R but reversed its finding that Garza had

---

[1] The parties have also filed responses in opposition and replies in support of the cross-motions for summary judgment, which are likewise before the Court. *See* UPS's "Response to Plaintiff's Motion for Partial Summary Judgment;" Garza's "Reply in Support of Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 43);" Garza's "Response to Defendant's Summary Judgment Motion;" *and* UPS's "Reply in Support of Defendant's Motion for Summary Judgment (ECF No. 49)." Dkt. Nos. 57, 58, 60, 61.

administratively exhausted his remedies for his failure to promote claims and its finding that he was not qualified to be a driver before June 2022. Dkt. No. 72 at 2, 4. Accordingly, the Court dismissed Garza's: (1) non-driver hiring and promotion claims; (2) driver hiring and promotion claims arising before August 19, 2020, and after June 15, 2021; and (3) accommodation claims arising before August 19, 2020. *Id.* at 4. Garza's only remaining claims are: (1) driver promotion claims arising between August 19, 2020, and June 15, 2021;[2] and (2) accommodation claims arising from August 19, 2020, to the present. *Id.*

## II. LEGAL STANDARD

### A.    *Rule 56 Summary Judgment*

A party may move for summary judgment by "identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a). The Court shall grant summary judgment when the movant shows there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Id.* Summary judgment is designed to "isolate and dispose" of factually unsupported claims which "no reasonable jury" would resolve in the claimant's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019) (citing Fed. R. Civ. P. 50(a)(1)), *cert. denied*, 140 S. Ct. 649 (2019).

Because summary judgment is not intended to deprive litigants of their right to try genuinely contested issues, the movant bears the heavy burden to show the absence of a genuine issue of material fact. *United States v. Burket*, 402 F.2d 426, 430 (5th Cir. 1968);

---

[2] The Order partially adopting the April 16 R&R identified "July 15, 2021" as the end date for the range of live driver hiring and promotion claims. Dkt. No. 72 at 4. This appears to be a typographical error, as the Order presumably meant to select the date on which Garza dual filed his administrative charges with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC"): *June* 15, 2021. *Id.* at 2; Dkt. No. 37-1 at 3. The Court will therefore treat the relevant range of live driver promotion claims as ending on June 15, 2021.

*Pitts v. Shell Oil Co.*, 463 F.2d 331, 335 (5th Cir. 1972); *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). Only after such a showing does the burden shift to the nonmoving party to demonstrate, through competent evidence in the record, that a genuine issue of material fact remains to be resolved. *Wise*, 58 F.3d at 195.

Facts are material when they might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The materiality of facts is determined by the applicable substantive law. *Id.*; *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994). A factual dispute is genuine only if a "rational trier of fact" could find for the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). Federal law governs that inquiry. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1036 n.10 (5th Cir. 1982).

The Court is not limited to the pleadings at summary judgment and may consider "affidavits, depositions, motions, answers to interrogatories, stipulations and any other material properly before it." *Munoz v. Int'l All. of Theatrical Stage Emp. & Moving Picture Mach. Operators of U. S. & Canada*, 563 F.2d 205, 207 n.1 (5th Cir. 1977). The Court must view that evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in their favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). Cross motions for summary judgment are analyzed independently of each other. *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1039 (2006).

## III.    DISCUSSION

### A.    *Garza's Motion for Summary Judgment*

Following the Court's disposition of UPS's Rule 12(c) Motion, Garza's remaining live claims are that UPS: (1) failed to promote him to driver positions from August 19, 2020, to June 15, 2021; and (2) refused him reasonable accommodations to work as a driver and

Preloader, since August 19, 2020. Dkt. No. 72 at 4; Dkt. No. 11 at 4, 6–9.

Garza seeks summary judgment to establish that: (1) he is disabled; (2) he was, at all relevant times, qualified to work as a driver; (3) UPS refused to allow him to work as a driver because of his disability; (4) his claims predating August 19, 2020, are not time-barred; and (5) UPS is precluded from raising a direct threat affirmative defense. Dkt. No. 43 at 5–6. Because the Court has already concluded that none of Garza's claims predating August 19, 2020, are cognizable, the Court need not address Garza's fourth summary judgment issue. Dkt. No. 72 at 4. Further, because deafness is a disability under the Americans with Disabilities Act ("ADA") (*see* 42 U.S.C. § 12102(1)(A), (2)(A); 29 C.F.R. § 1630.2(i); *Windham v. Harris Cnty., Texas*, 875 F.3d 229, 238 (5th Cir. 2017)) and UPS does not dispute that Garza is disabled (Dkt. No. 58 at 7), summary judgment that Garza is disabled should be **GRANTED**. Fed. R. Civ. P. 56(a). The Court will consider the remaining issues in turn.

### 1. Garza is not entitled to summary judgment that he was qualified at all relevant times, i.e., between August 19, 2020, and June 15, 2021.

A qualified individual is someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 762–63 (5th Cir. 1996) (quoting 42 U.S.C. § 12111(8)). In this Circuit, courts must first ask whether the individual satisfies occupational prerequisites such as "skill, experience, education and other job-related requirements," then whether they can perform the essential functions of the job with or without reasonable accommodation. *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 n.14 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1050 (1998); 29 C.F.R. § 1630.2(m). Legally required licenses and certifications count as prerequisites. *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 812 (5th Cir. 2016); *see also* 29 C.F.R. Pt. 1630, App. § 1630.2(m). Furthermore, the employer's judgment and any written job descriptions are to be considered

evidence of which job functions are essential. 42 U.S.C. § 12111(8). Persons generally may not operate Commercial Motor Vehicles ("CMVs") unless they pass the "forced whisper" test for hearing acuity and undergo a medical examination. *Williams v. J.B. Hunt Transp., Inc.*, 132 F. Supp. 3d 858, 867–68 (S.D. Tex. 2015) (Harmon, J.), *aff'd*, 826 F.3d 806 (5th Cir. 2016); 49 C.F.R. §§ 391.11(a), 391.41(a)(1)(i), (a)(3)(i), (b)(11). An individual who cannot pass the forced whisper test must obtain an exemption from the Federal Motor Carrier Safety Administration ("FMCSA") to operate a CMV. 49 U.S.C. § 31315(b)(1); 49 C.F.R. § 391.41(a)(3)(ii).

Garza's argument that he was qualified at all relevant times depends on three intermediary factual conclusions: (1) that he could have completed all necessary training; (2) that he could have met all communication requirements for the job; and (3) that he could have met all other job-related requirements, including obtaining a Department of Transportation ("DOT") card, during the onboarding process. *See* Dkt. No. 43 at 14–15. But because Garza's contentions are permeated with disputed fact questions, summary judgment on the qualification issue is not appropriate.

First, Garza argues that because he was able to successfully train as a Temporary Cover Driver ("TCD") under accommodations in 2024, and other deaf drivers had been successfully trained before 2024, this shows Garza was, "at all relevant times," able to complete training with accommodations. *Id.* at 13–14. But that does not necessarily follow. Garza successfully trained as a TCD under UPS's "Integrad" program. *See* Dkt. No. 43-1 at 32–33. As UPS's Integrad Training Manager, Jamie Becker, explained, Integrad evolved significantly since its inception in 2007. Dkt. No. 58-8 at 3–4. Not all drivers were trained under Integrad until at least 2022 as training facilities were slowly opened. *Id.* at 3. Additionally, UPS did not consider modifying Integrad to accommodate deaf driver candidates until 2023 and those modifications were not fully implemented until March of 2024. *Id.* at 3–4.

It is far from obvious that Garza would have been able to complete Integrad training in its pre-2024 iterations. Dkt. No. 58 at 18. To conclude otherwise requires the Court to impermissibly weigh the evidence or draw inferences in Garza's favor. *See Anderson*, 477 U.S. at 255. Nor does the fact that UPS had successfully trained deaf drivers in the past entail that Garza would have been among them. Dkt. No. 43-7 at 120–21. Moreover, counterfactual arguments do not ordinarily justify summary judgment. *See Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 218 (5th Cir. 2023) (holding that "counterfactual uncertainty" precludes summary judgment); *Holcombe v. United States*, No. SA-18-CV-555-XR, 2021 WL 67217, at *16 (W.D. Tex. Jan. 6, 2021) (same); *Hunt v. Cromartie*, 526 U.S. 541, 542 (1999) ("[Summary judgment] is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."); *Montgomery v. D.C.*, No. CV 18-1928 (JDB), 2023 WL 4684897, at *7 (D.D.C. July 21, 2023) (explaining that counterfactual arguments "require[] the fact finder to draw inferences about what would have happened given a different set of circumstances.").

Garza's other counterfactual arguments, then, are equally unpersuasive. Garza argues that UPS's present accommodations for deaf drivers show that Garza's communication limitations *could have been* similarly accommodated at all relevant times in the past. *See* Dkt. No. 43 at 14–15. Garza admits that UPS began implementing these accommodations in 2024 but cites Jamie Becker's deposition testimony that some of the accommodating technology, speech to text software, has existed "since at least 2017." *Id.* at 14; Dkt. No. 43-2 at 47–50. This does not change the fact that UPS did not utilize that technology until 2024, nor that UPS otherwise considered the ability to "hear and communicate in spoken English" an essential function. Dkt. No. 43-8 at 4, 7. And because the ADA only affords Garza the right to a *reasonable* accommodation, absent further evidence that UPS's present accommodations would have been reasonable to implement in the past, Garza has not shown that UPS would

have been obligated to accommodate Garza as it currently does deaf drivers.

Garza's final counterfactual argument is that because he was able to obtain a DOT card and FMCSA hearing exemption in 2022, he would have been able to do so "in due course" in the past. Dkt. No. 43 at 16–17. But reasonable fact finders can disagree. Garza cites to the FMCSA's decisions in 2022 and 2024,[3] which considered Garza's driving record wherein several traffic violations appear, to grant him a hearing exemption. *See id.* at 17; Dkt. No. 43-21 at 7–10; Dkt. No. 43-22 at 5–12. But because the FMCSA makes exemption decisions based on an "individual assessment," it is possible that Garza could have been denied an exemption for other reasons even if he had previously applied. *2022 FMCSA Exemption Decision*.

Garza also claims that his "driving history prior to 2018 is consistent with his driving history from 2018-2024." Dkt. No. 43 at 17. Garza's evidence for this point does not directly support that, at best, debatable contention. *See* Dkt. No. 43-1 at 100, 103–104; Dkt. No. 43-22 at 5–12. Regardless, evaluating evidence for consistency is properly the function of the trier of fact, not of a court at summary judgment. *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n.3 (5th Cir. 2002) (citing *Dibidale, Inc. v. Am. Bank & Trust Co.*, 916 F.2d 300, 307–08 (5th Cir.1990)).

Notwithstanding counterfactual problems, the Court identifies several other material fact disputes concerning the issue of Garza's qualification. Garza admits that UPS hires drivers based on a seniority system whereby "[t]he most senior person who signed the bid list is contacted first." Dkt. No. 43 at 8. Therefore, Garza could not have been qualified as a driver unless he signed the bid list for the specific position desired and was the most senior bidder up for consideration. Dkt. No. 58 at 13. Garza generally asserts that he signed all bid lists of which he was aware since 2016 and that if there were any bid lists he did not sign, it was

---

[3] Qualification of Drivers; Exemption Applications; Hearing, 87 FR 34747-01 [hereinafter *2022 FMCSA Exemption Decision*]; Qualification of Drivers; Exemption Applications; Hearing, 89 FR 59967-01.

because was not adequately informed about them. Dkt. No. 43-1 at 81, 84–86, 161. But, as UPS observes, Garza's deposition testimony reveals there were instances in which he could have failed to sign bid lists for other reasons. *See id*. at 86, 156–57, 161–63. At best, this raises a genuinely disputed question as to whether Garza signed all the bid lists for the positions he claims he was denied and, if not, why.[4] UPS also alerts the Court to at least fifteen other essential job functions contained in UPS's position statement with the EEOC which Garza does not address, raising fact issues as to Garza's ability to satisfy these too. Dkt. No. 58-6 at 59.

Because Garza has not established the absence of a genuine dispute of material fact, summary judgment that he was, at all relevant times, qualified to become a driver should be **DENIED**.

### 2. *Garza is not entitled to summary judgment that, at all relevant times, UPS refused to allow him to work as a driver because of his disability.*

Garza moves for summary judgment only for the post-October 2019 period during which he alleges discrimination due to his disability. Dkt. No. 43 at 20 n.4. Garza's driver discrimination claims, however, are now limited to the period between August 19, 2020, and June 15, 2021. Dkt. No. 72 at 4. The Court will thus limit its analysis to this period.

The ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Actionable discrimination includes limiting individuals in ways that adversely affect their job opportunities, failing to make reasonable accommodations for the individual's known limitations, and employing qualification standards and criteria that

---

[4] UPS reasonably calls into question Garza's claim that lack of notice was the only potential obstacle to his signing all the bid sheets. Many of the bid sheets expressly indicate that moving violations within specified time windows are disqualifying. Dkt. No. 43-9 at 4, 6, 8, 10, 12. A reasonable person could conclude that Garza might have avoided signing some bid sheets in part due to his accident history. *See* Dkt. No. 43-21 at 7–10; Dkt. No. 43-22 at 5–12.

"screen out or tend to screen out" disabled individuals unless job-related and consistent with business necessity. *Id.* § 12112(b).

Garza primarily claims that he suffered adverse employment action because of his disability pursuant to UPS's official written policy, implemented in October 2019 and discontinued in January 2024, whereby UPS "refused to hire deaf candidates who did not have the ability to pass the hearing portion of the DOT medical exam...without a hearing exemption." Dkt. No. 43 at 7, 20. Garza argues that UPS's policy affected him because UPS has refused to accept his bids or promote him since 2019 and claims he has applied for every driver position of which he was aware since 2016. *Id.* at 20−21. Moreover, Garza continues to argue that UPS's failure to notify him of promotion opportunities constitutes the only reason he would not have signed a bid list. *Id.* at 21. But as previously discussed, the Court finds a genuine factual dispute exists as to that issue.

The record also reveals a genuine dispute as to whether the October 2019 policy ever applied to Garza within the relevant period. The official policy itself reads, in relevant part:

> UPS has decided not to participate in the hearing exemption program at this time. UPS will not accept DOT cards that are accompanied by a hearing exemption; applicants for driver positions of DOT-regulated commercial vehicles must demonstrate that they have satisfied the hearing and speaking requirements established in the Federal Motor Carrier Safety Regulations, along with all other applicable requirements under federal, state, and local law as well as UPS policies.

Dkt. No. 43-13.

The problem is immediately apparent: Given the fact that Garza did not obtain a DOT card or FMCSA exemption until June 2022, how could a policy forbidding the acceptance of DOT cards accompanied by a hearing exemption have applied to him before then? At the very least, that question raises a genuinely disputed fact issue precluding summary judgment. *See* Dkt. No. 58 at 22; Dkt. No. 43-1 at 116.

Garza also claims he can show that he was "reliably passed over every year from 2017

until 2024" for driver positions in accordance with UPS's policy. Dkt. No. 43 at 21. Garza's evidence for this consists mostly of deposition testimony, seniority listings, and bid sheets showing that several less senior drivers were hired instead of him. *See* Dkt. No. 43-5 at 10–11, 50–52, 69–74, 76–77; Dkt. Nos. 43-9, 43-11, 43-16.

Yet, even if there were any sense in which UPS's October 2019 policy could have affected Garza within the relevant period, Garza also had to satisfy multiple other prerequisites to become a prospective driver candidate—including having no disqualifying moving violations or accidents. Dkt. No. 43-9 at 4, 6, 8, 10, 12; Dkt. No. 58 at 23. The record does not foreclose the possibility that Garza could have been disqualified for failure to satisfy some other precondition before the 2019 policy would apply to deny him a promotion opportunity because of a hearing exemption. Because reasonable minds can disagree about whether the 2019 policy ever applied to Garza, there remains a genuine issue for the trier of fact. Summary judgment that Garza was discriminated against because of his hearing disability should be **DENIED**.[5]

---

[5] The Court finds that these genuine and material factual disputes are sufficient to support its recommendation to deny summary judgment. The Court is unconvinced by UPS's arguments that its October 2019 policy, as a matter of law, was not facially discriminatory. *See* Dkt. No. 58 at 21–22. UPS argues that the policy merely "adopts the FMCSA standard regulation." *Id.* at 21. But the policy plainly does not "adopt" the FMCSA's additional regulatory judgment that individuals with exemptions from the DOT's physical qualification standards are "physically qualified to drive a commercial motor vehicle." Dkt. No. 43-13; 49 C.F.R. § 391.41(a)(3)(ii). Contrary to UPS's characterization, the hearing exemption program is not "experimental," but rather *law* adopted under an express delegation from Congress to grant such exemptions. Dkt. No. 43-13; 49 U.S.C. § 31315(b)(1). UPS's reliance on *Albertson's, Inc. v. Kirkingburg* to the contrary is misplaced. 527 U.S. 555 (1999); Dkt. No. 49 at 21–22. There, the Supreme Court held that an employer did not have to justify its job requirement that an employee meet default regulatory standards despite the availability of a regulatory exemption because the exemption was merely experimental. *Albertson*'s, 527 U.S. at 558, 578. The exemption in *Albertson*'s was experimental because it did not substantively modify the default regulatory standard. *Id.* at 574. The Supreme Court gave two clearly distinguishable reasons for this conclusion: first, the agency arrived at no "final, factual conclusion" that waiver would be comparably as safe as observing the ordinary standard; and second, the waiver scheme was proposed only as an information-gathering tool for future substantive alterations in the default standard. *Id.* at 574–76. Neither factor is present in the FMCSA's exemption decision. *See 2022 FMCSA Exemption Decision*. UPS's attempt to frame the FMCSA's default forced whisper standard as required by law and, therefore, binding on employers is wholly unpersuasive. Dkt. No. 58 at 22. Very clearly, the default hearing requirement is obligatory *except* to the extent the FMCSA decides an exemption would be as safe, or safer, than observing the forced whisper standard. 49 U.S.C. § 31315(b)(1).

### 3.  *Garza is entitled to summary judgment that UPS is precluded from raising a direct threat defense as a matter of law.*

The ADA recognizes an affirmative defense for employers who can show the employee would, if hired, pose a direct threat to themselves or others in the workplace. *See* 42 U.S.C. § 12113(b); 29 C.F.R. § 1630.2(r). The direct threat defense must be "based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence," and upon an expressly "individualized assessment of the individual's present ability to safely perform the essential functions of the job[.]" *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019) (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002)); 29 C.F.R. § 1630.2(r). Garza argues that UPS is precluded as a matter of law from raising a direct threat defense. Dkt. No. 43 at 23. Garza is correct.

As UPS's Occupational Health Manager, Terra Vellema, explained, UPS never conducted an individualized assessment to determine if hiring Garza as a driver would pose a direct threat to himself or others at work. Dkt. No. 43-7 at 12, 125–26. Nor does UPS in response address whether it ever conducted such an assessment. [6] *See* Dkt. No. 58 at 25–26.

---

[6] The entirety of UPS's response to Garza's contention that no individualized assessment of direct threat was conducted reads:

> In arguing that UPS did not rely on the "most current medical knowledge," Garza contradicts the position in his Rule 12(c) response that UPS is bound by the FMCSA decision to issue him a hearing exemption. Garza's summary judgment motion confirms he is challenging the FMCSA's 50-year regulation requiring medical examinees to pass the forced-whisper test, predicated on findings that the ability to hear is related to safely driving a CMV. But, in his Rule 12(c) response, Garza argued that an FMCSA determination cannot be challenged except by impleading the FMCSA. Either a private party can challenge an FMCSA determination in an employment discrimination suit, or it cannot. In other words, if Garza can challenge the FMCSA's studies-based determination supporting its current hearing standard in the forced-whisper test, then UPS can challenge the FMCSA's decision to issue Garza a hearing exemption in this suit. Garza cannot have it both ways.

Dkt. No. 58 at 26 (internal citations omitted).

UPS's argument that Garza's contention should be construed as challenging the FMCSA's forced-whisper standard is hard to follow. UPS appears to imply tension between Garza's allegation that UPS did not rely on current medical knowledge or evidence in making a direct threat assessment and UPS's own

UPS has therefore failed to carry its burden in opposition to summary judgment to show that a genuine fact question remains as to this issue. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) ("[T]he nonmoving party must set forth specific facts showing the existence of a genuine issue concerning every essential component of its case." (internal quotations omitted)); *Gilley v. Protective Life Ins. Co.*, 17 F.3d 775, 781 (5th Cir. 1994) ("We have held that an argument is waived if the party fails to make the argument in response to summary judgment."); *Del Toro v. Fiesta Mart, LLC*, No. 4:21-CV-1166, 2023 WL 3025072, at *2 (S.D. Tex. Apr. 20, 2023) (Hanen, J.) ("A party's failure to respond to arguments raised in a motion for summary judgment constitutes waiver or abandonment of those issues at the district court level.").

Furthermore, because conducting an individualized assessment is a prerequisite to asserting a successful direct threat defense, failure to do so warrants judgment as a matter of law in Garza's favor. Fed. R. Civ. P. 50(a)(1). Summary judgment that UPS is precluded from raising a direct threat defense should be **GRANTED**.

## B.    *UPS's Motion for Summary Judgment*

UPS seeks summary judgment that: (1) Garza was not qualified for any promotional opportunity he has identified; (2) Garza failed to exhaust his administrative remedies; and (3) Garza is unable to establish his reasonable accommodation claims. Dkt. No. 49 at 6. Because the Court has already concluded that Garza has not exhausted his administrative

---

characterization of its 2019 policy as adopting the FMCSA's forced whisper standard, ostensibly "predicated on findings that the ability to hear is related to safely driving a CMV." Dkt. No. 43 at 24; Dkt. No. 58 at 21–22, 26. UPS's argument obfuscates the critical fact that the FMCSA, as Garza repeatedly points out, has also determined that "current medical information and literature" and "the best available evidence" sometimes supports exempting certain deaf individuals, as it did Garza, from the forced whisper standard. Dkt. No. 43 at 9, 24; Dkt. No. 43-15 at 5. There is nothing inconsistent in Garza's argument that UPS, by refusing to heed the FMCSA's findings on hearing exemptions, did not rely on current medical knowledge or evidence in conducting a proper direct threat assessment, if any. It should go without saying that a litigant who relies on an explicit and lawful regulatory exemption from a baseline standard does not thereby challenge the legality of the baseline.

remedies for his driver promotion claims arising before August 19, 2020, and after June 15, 2021, the Court need not address UPS's second summary judgment issue.[7] Dkt. No. 72 at 4. Further, with respect to UPS's first summary judgment issue, the Court need only address UPS's qualification arguments for driver promotion claims falling between August 19, 2020, and June 15, 2021. *Id.*

As to the first summary judgment issue, UPS confusingly begins its briefing on a point that seemingly has nothing to do with Garza's driver qualifications. Namely, UPS argues that Garza is limited to *full-time* driver promotion claims because Garza's First Amended Complaint and discovery responses only allege a denial of full-time, not part-time, positions. Dkt. No. 49 at 11–12; Dkt. No. 11; Dkt. No. 49-1 at 6. As Garza and the summary judgment evidence shows, however, that is debatable. Dkt. No. 57 at 15.

In response to UPS's interrogatories, Garza explicitly lists several part-time driving positions for which Garza alleges to have signed a bid sheet and have been passed over. Dkt. No. 57-18 at 9–10; Dkt. No. 49 at 12 n.6. UPS otherwise draws heavily on Garza's First Amended Complaint in which several of his allegations imply a narrow focus on full-time driver claims. Dkt. No. 61 at 20–21. For example, Garza alleges that UPS has denied Garza promotion opportunities for "Driver or *another full-time* position," and similarly claims that he was qualified for "Driver *and other full-time* non-Driver positions." Dkt. No. 11 at 3, 7 (emphasis added). But in several other places, Garza's pleadings can easily be read to encompass part-time driver positions too. Garza alleges that he has submitted bid sheets for "*full-time and Driver* positions," that other deaf employees treated similarly as Garza have not been promoted to "Driver *or to a full-time* position," and that UPS implements a qualification standard that discriminates against deaf employees in hiring for "*full-time and*

---

[7] UPS sought summary judgment that Garza has not exhausted driver promotion claims arising before September 2020 and after February 2021. Dkt. No. 49 at 15.

*Driver* positions." *Id.* at 4, 7.

Reasonable factfinders can disagree about the scope of the promotion claims contemplated by Garza's pleadings and discovery responses. Thus, to the extent UPS's argument that Garza is limited to full-time driver promotion claims constitutes a standalone issue for summary judgment, summary judgment should be **DENIED**. The Court will address UPS's remaining summary judgment arguments in turn.

### 1. *UPS is entitled to summary judgment that Garza was not qualified to work as a driver from April 4, 2021, to June 15, 2021.*

UPS's first pertinent summary judgment argument is that Garza was not qualified for driver positions because of his traffic history.[8] Dkt. No. 49 at 20. As explained on UPS's bid sheets, a driver candidate is not qualified unless they have: (1) no moving violations within the last twelve months; and (2) no more than two or three moving violations in the past thirty-six months. *See generally* Dkt. Nos. 49-9, 49-10.

Texas Department of Public Safety ("DPS") records show Garza was convicted of speeding violations on May 4, 2021 (offense date: April 4, 2021), and October 8, 2022 (offense date: September 22, 2022), and was involved in a crash on May 21, 2022. Dkt. No. 49-14 at 3. Garza admits that these violations temporarily disqualified him for driver promotions within the date ranges specified on the UPS bid sheets: *i.e.*, "April 4, 2021-April 4, 2022[,] and May

---

[8] UPS, resting the assumption that Garza could only pursue full-time driver promotion claims, also sought summary judgment that Garza was not qualified for an Article 22.4 full-time combination driver position, which UPS claims was the only specific full-time driver position for which Garza bid. Dkt. No. 49 at 12. Without reaching UPS's summary judgment arguments, because Garza bid on this position in May 2020, any claims concerning it are not live and have been dismissed on administrative exhaustion grounds. Dkt. No. 72 at 4. For the same reason, the Court need not address UPS's arguments that Garza was not qualified for any driver positions before the enactment of its October 2019 policy on hearing exemptions. Dkt. No. 49 at 16–20. UPS further challenges Garza's claims for "promotional opportunities he alleges arose before September 2020 and after February 2021," by arguing that Garza was obligated to individually exhaust all such claims because the underlying positions differed in various respects. Dkt. No. 49 at 15. But UPS's characterization of these differences as "material" is wholly conclusory and unsupported by any legal citation. *Id.* Finally, to the extent UPS reiterates its Rule 12(c) arguments that Garza was not qualified for driver positions before obtaining a DOT card, because the Court has already rejected them, they are inapposite here. Dkt. No. 72 at 3–4.

22, 2022-Octover 8, 2023." Dkt. No. 57 at 19. "[W]hen no genuine issues of material fact exist[s], the court may grant a motion for summary judgment based on an admission." *Printy v. Crochet & Borel Servs.*, 196 F.R.D. 46, 50 (E.D. Tex. 2000) (citing *Hulsey v. State of Tex.*, 929 F.2d 168, 171 (5th Cir. 1991)). Therefore, summary judgment that Garza was not qualified for any driver positions from April 4, 2021, to June 15, 2021, should be **GRANTED**.

The remaining issue, then, is whether Garza was disqualified from other driver positions from August 19, 2020, to April 4, 2021. UPS next argues that Garza cannot show he was the most senior bidder for any other position. Dkt. No. 49 at 20–21. But the bid sheets on which UPS relies at best show that Garza was not the most senior bidder *at the time of bidding*; they do not conclusively show Garza lacked seniority at the time the hiring or promotion decision was made. *See generally* Dkt. No. 49-10. The seniority listing report which Garza attaches corroborates his claim that UPS hired several drivers with less seniority than him, some within the relevant window of live claims.[9] Dkt. No. 57 at 12–13, 17–19; Dkt. No. 57-11 at 2 (part-time seniority attainment found on fourth column).

UPS and Garza agree that UPS contacts prospective driver candidates *in order of seniority*. Dkt. No. 57 at 8; Dkt. No. 49 at 7–8. Thus, for UPS to reach these less senior candidates, it first had to go down the list, contacting more senior candidates, offering them the opportunity to proceed further in the hiring process, and vetting them against the qualification criteria. Dkt. No. 49 at 8. Eventually, UPS would have reached Garza, the most senior remaining bidder, at which point seniority would not have been an obstacle and so could not have served as a basis for disqualification. *Id.* It is possible Garza might have failed to satisfy other prerequisites, but UPS does not identify any, aside from moving violations and seniority status, that could have disqualified Garza during this time. *Id.* at 20–21.

---

[9] Those hires are: (1) Reynaldo Lara (hired August 21, 2020); (2) Ruben Yanez, III (hired August 26, 2020); and (3) Pablo Alvarez, Jr. (hired August 28, 2020). Dkt. No. 57-11 at 2.

In a similar vein, Garza's remaining traffic history does not support summary judgment for UPS on his qualification status. The parties vigorously dispute how many moving violations or accidents, if any, Garza was involved in outside of the three captured by DPS records. Garza maintains that those three violations, in 2021 and 2022, are his only ones from 2016 to the present. *See* Dkt. No. 57 at 19; Dkt. No. 57-22 at 1, 5. However, during his deposition, Garza testified that he was involved in minor accidents in 2020 and 2023; and when asked whether he had ever received more than one speeding ticket, Garza responded, "sometimes I would get two in a year, and then sometimes I would get five over the span of three years." Dkt. No. 49-3 at 98–99, 103. Garza did not specify whether he received speeding tickets with such frequency during 2020 or 2021 and could not remember his most recent one. *Id.* at 104. UPS argues that DPS records only show violations for which Garza was convicted and that Garza's testimony suggests he was involved in additional incidents that may have been dismissed or that were pending. Dkt. No. 61 at 13.

In a sworn declaration, Garza avers that any inconsistencies between his testimony and DPS records resulted from his inability to consult his records during his deposition. Dkt. No. 57-14 at 1–2. UPS asks the Court to strike Garza's declaration as a sham affidavit, *i.e.*, a statement that "impeaches, without explanation, sworn testimony," in order to manufacture a fact issue to defeat summary judgment. *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000), *cert. denied sub nom. Doe v. Dallas Indep. Sch. Dist.*, 121 S. Ct. 766 (2001); *Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 458 (5th Cir. 2024) (internal quotations omitted); Dkt. No. 61 at 12. However, because Garza's testimony, explicitly at times, apprised UPS of his uncertainty as to violation dates without consulting his traffic records, his declaration is not "so markedly inconsistent" with his testimony as to "constitute an obvious sham." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (per curiam), *reh'g en banc denied*, 940 F.3d 900 (5th Cir. 2019),

*cert. denied sub nom. Kaufman Cnty., Texas v. Winzer*, 141 S. Ct. 85 (2020); *see also* Dkt. No. 49-3 at 98–105. UPS, then, has not cleared the high bar to exclude Garza's declaration as a sham affidavit. *Johnson*, 90 F.4th at 458.

Therefore, summary judgment that Garza was not qualified for driver positions from August 19, 2020, to April 4, 2021, should be **DENIED**.

> ### 2.    UPS is entitled to summary judgment that Garza cannot pursue driver accommodation claims arising from April 4, 2021, to April 4, 2022, and from May 22, 2022, to October 8, 2023.

UPS lastly seeks summary judgment as to Garza's accommodation claims. Because Garza was not qualified for any driver position during the period from April 4, 2021, to April 4, 2022, and from May 22, 2022, to October 8, 2023, summary judgment that Garza is precluded from pursuing driver accommodation claims arising during those intervals should be **GRANTED**.[10] *See* 42 U.S.C. § 12112(b)(5)(A); *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020), *cert. denied sub nom. Clark v. Inco Champion Nat'l Sec., Inc.*, 141 S. Ct. 662 (2020); *see also* Dkt. No. 57 at 19. Additionally, the Court will not consider Garza's accommodation claims predating August 19, 2020, because they are time-barred. Dkt. No. 72 at 4. The question, then, is which of Garza's accommodation claims, within their respective remaining live periods, survive summary judgment.

UPS first raises the issue of injury; specifically, UPS argues that Garza "has not claimed any damages that stem from a denial of any disability accommodations, independent of being denied in general a promotion to a full-time driver position." Dkt. No. 49 at 23. UPS cites no authority, either in its summary judgment or Rule 12(c) briefings, to show that Garza is required to identify some additional injury apart from a denial of accommodations to succeed

---

[10] In challenging Garza's driver accommodation claims, UPS reiterates its earlier summary judgment arguments that Garza was not qualified for a driver position. Dkt. No. 49 at 23. The Court construes UPS's briefing as seeking summary judgment on Garza's driver accommodation claims based on his disqualification for driver positions.

on his claim. *See id.* at 23–25; Dkt. No. 67 at 32. UPS, thus, has not shown it is entitled to judgment as a matter of law on this issue even if Garza cannot identify any such injury. *See* Fed. R. Civ. P. 50(a)(2); *Logal v. United States*, 195 F.3d 229, 233 (5th Cir. 1999) (explaining that a movant for judgment as a matter of law must "specify…the law and the facts on which the moving party is entitled to the judgment.").

In fact, the only time UPS squarely addresses the injury issue is in its objections to the April 16 R&R. Dkt. No. 68. But even if the Court entertained the arguments UPS raises there, UPS would still not be entitled to judgment as a matter of law. Specifically, UPS cites to *DeLeon v. City of Alvin Police Dep't*, No. CIV.A. H-09-1022, 2011 WL 43432 (S.D. Tex. Jan. 6, 2011) and *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554 (5th Cir. 1998) for the proposition that "[t]he ADA requires actual injury resulting from the denial of reasonable accommodation to maintain a claim." *Id.* at 18. Context, however, dispels UPS's notion.

In *Armstrong*, the plaintiff job applicant was subjected to a pre-employment medical screening and was denied the job because of a prior undisclosed "possible asbestos exposure." *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 556–57 (5th Cir. 1998). The plaintiff sued, alleging a violation of 42 U.S.C. § 12112(d)(2)(A), which bars employers from "conduct[ing] a medical examination or mak[ing] inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." *Id.* at 557. The district court interpreted Section 12112(d)(2)(A) to only provide a cause of action for *disabled* employees and granted the employer summary judgment after finding that plaintiff was not unlawfully discriminated against because he was not disabled, which the plaintiff conceded on appeal. *Id.* at 560. The Fifth Circuit affirmed, holding that "damages liability under section 12112(d)(2)(A) must be based on something more than a mere violation of that provision. There must be some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise from a single violation." *Id.* at 562. Properly construed, then,

*Armstrong* signals that discrimination by reason of disability is a lynchpin element of a compensable ADA injury, which is necessarily lacking when the plaintiff is not disabled; it did not hold that disabled plaintiffs must show an injury over and above prima facie disability discrimination to succeed on an ADA claim.[11] *Id.* at 560–61.

*DeLeon* is consistent with this view. In *DeLeon*, the plaintiff, a deaf woman, was arrested for assaulting her brother with a knife and, after a failed suicide attempt, detained in a mental health cell pending evaluation. *DeLeon v. City of Alvin Police Dep't*, No. CIV.A. H-09-1022, 2011 WL 43432, at *1 (S.D. Tex. Jan. 6, 2011) (Hoyt, J.). The plaintiff sued under Title II of the ADA, alleging intentional discrimination by county officials for failing to accommodate her disability. *Id.* The court held that "a plaintiff is obligated to show, by competent evidence, that a defendant's violation of the ADA proximately caused her actual injury before she can recover." *Id.* at *3. The court granted summary judgment to the defendants because the plaintiff, whose uncooperative conduct prevented the defendants from ascertaining her accommodation needs, "failed to establish…that the defendants discriminated against her by reason of [her] disability," *Id.* at *3–4. Once again, the dispositive issue was the absence of evidence that the defendants engaged in disability-conscious discrimination.

The present case is distinguishable from *Armstrong* because Garza is in fact disabled. Dkt. No. 58 at 7. And unlike the plaintiff's accommodation needs in *DeLeon*, here it is genuinely disputed when or whether UPS knew that Garza needed accommodations. Dkt. No.

---

[11] Indeed, the Fifth Circuit's *Armstrong* holding was remarkably tepid. First, it narrowly concluded that the particular plaintiff had not alleged a compensable injury "whether or not in some other context a nondisabled individual might be afforded judicial relief in respect to a section 12112(d)(2)(A) violation." *Armstrong*, 141 F.3d at 558; *see also Fuzy v. S&B Eng'rs & Constructors, Ltd.*, 332 F.3d 301, 303 (5th Cir. 2003) (observing that *Armstrong* "specifically left open the question of whether or not the language of § 12112(d) would permit a non-disabled person from bringing suit."), *reh'g en banc denied*, 77 F. App'x 289 (5th Cir. 2003), *cert. denied*, , 540 U.S. 1108 (2004). Second, *Armstrong* expressly distinguished the "atypical and uncommon suit" at issue from ordinary, and presumably unproblematic, ADA cases in which a party challenges an adverse employment action because of disability. *Armstrong*, 141 F.3d at 560.

49-3 at 111–12; Dkt. No. 57-14 at 2. If UPS had such knowledge but refused to furnish accommodations, its conduct would undoubtedly constitute a compensable injury under the ADA. *See* 42 U.S.C. § 12112(b)(5)(A) (to "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee.").

Finally, as relevant here, UPS challenges Garza's Preloader accommodation claims for communications and interpretive assistance.[12] Dkt. No. 49 at 23–25. UPS asserts that the only time in which Garza requested a translator and was not provided one was "around 2019." *Id.* at 24. But Garza's deposition testimony on which UPS relies is, at best, equivocal on that point. Although Garza affirmatively identified "one time…[a]round 2019" when he requested an interpreter, Garza could not "recall immediately" whether he had asked for interpretive assistance at other times. Dkt. No. 49-3 at 111–12. Moreover, Garza declared under oath that "[f]or my entire employment at UPS, until just recently when I started working as a part time driver, I was denied effective translation, interpretation, and other means to understand what was going on and what was shared" in meetings, and that he has "asked for help from supervisors many times to translate from meetings and conversations." Dkt. No. 57-14 at 2;

---

[12] UPS also challenges Garza's driver accommodation claims for the reasons articulated in Part IV.A. of its Motion for Summary Judgment. Dkt. No. 49 at 23. The arguments in question challenge Garza's qualification for driver positions and have either already been addressed or are inapposite: (1) the Court rejects UPS's arguments that Garza was limited to full-time driver claims and declines to address Garza's qualification for the Article 22.4 full-time combination driver position because Garza bid on that position in May 2020, outside the window of live driver claims (*Supra*, at p. 13–14, n.8; Dkt. No. 49 at 11–15); (2) the Court declines to address UPS's arguments that Garza was not qualified before the enactment of its October 2019 policy because those claims are likewise outside the period of live claims (*Supra*, at n.8; Dkt. No. 49 at 16–20); (3) the Court has held that Garza's lack of a DOT card before June 2022 was not disqualifying (Dkt. No. 72 at 3–4); (4) the Court rejects UPS's arguments that Garza was disqualified because of his traffic history and seniority status (*Supra*, at p. 14–17; Dkt. No. 49 at 20–21); and (5) to the extent it is relevant, the Court rejects UPS's argument that its October 2019 policy was not discriminatory. *Supra*, at n.5; Dkt. No. 49 at 21–22. UPS further reasserts its Rule 12(c) exhaustion arguments against Garza's accommodation claims for communications assistance. Dkt. No. 49 at 23. These arguments, too, are meritless; the Court has already rejected them. Dkt. No. 33 at 15; Dkt. No. 67 at 9–10; Dkt. No. 72 at 2–3.

*see also Tesco Corp. v. Weatherford Int'l, Inc.*, 904 F. Supp. 2d 622, 636 (S.D. Tex. 2012) (Ellison, J.) ("Verified or sworn pleadings are competent summary judgment evidence.").

UPS attempts to avoid this fact issue by arguing that Garza's declaration is not founded on personal knowledge and amounts to mere speculation. Dkt. No. 61 at 25. Although courts apply the Federal Rules of Evidence at summary judgment, including the requirement that an affidavit be based on personal knowledge, Garza's declaration overcomes these evidentiary barriers. Fed. R. Civ. P. 56(c); Fed. R. Evid. 602. UPS specifically argues that Garza lacks knowledge about any information he may have missed at meetings. Dkt. No. 61 at 25. This contention builds on UPS's erroneous assumption that Garza has to show damages apart from a denial of accommodations to have a viable ADA claim. Dkt. No. 49 at 24. But, again, Garza need not identify information he missed to assert a successful accommodation claim against UPS; he need only show that UPS failed to reasonably accommodate the limitations caused by his known disability. 42 U.S.C. § 12112(b)(5)(A); TEX. LAB. CODE ANN. § 21.128(a). An employer breaches its duty to provide reasonable accommodations simply by failing to provide "meaningful access" to the benefit or service the employer offers. *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

Yet, even if Garza needed to show some additional prejudicial effect from the denial of accommodations, UPS produces no legally (or logically) compelling basis for its belief that Garza needs personal knowledge *of* the information he allegedly missed by not being accommodated, as opposed to knowledge *that* some information was missed. In any event, Garza's contention that he asked for and was denied translation help has a sufficient foundation in personal knowledge to satisfy Rule 602 because Garza presumably would have made those requests himself or through an agent. There is thus at least a material fact issue as to when or whether UPS was aware Garza needed communications accommodations to meaningfully and equally participate in his work environment.

UPS further argues that because it otherwise provided Garza with interpreters and communications assistance, Garza was reasonably accommodated as a matter of law. Dkt. No. 49 at 24–25. UPS's argument assumes that providing interpreters for deaf employees is per se a sufficient accommodation and that an employer is only obligated to furnish accommodations to facilitate performance of essential job functions. *Id.* at 25. Both premises are legally unsound.

While an accommodation under the ADA can include interpreters, the statutory text gives no indication that it, or any other accommodation, is categorically sufficient in all situations. 42 U.S.C. § 12111(9). Nor is it the ultimate objective of accommodations to enable performance of job functions. *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 453 (5th Cir. 2013) (holding that "[t]he language of the ADA, and all available interpretive authority" indicate that "reasonable accommodations are not restricted to modifications that enable performance of essential job functions."). Accommodations may be necessary to make facilities "readily accessible...and usable" to the employee or to allow the employee to "enjoy equal benefits and privileges of employment." *Id.* at 453–54 (quoting 42 U.S.C. § 12111(9)(A) and 29 C.F.R. § 1630.2(o)(1)(iii)).

Despite Garza's admission that he could perform all essential job functions, there remains a disputed fact issue as to whether additional or different accommodations would have eased difficulties and enabled Garza to meaningfully and equally participate in his work environment. Dkt. No. 57-14 at 2; *Choate*, 469 U.S. at 301. UPS has not met its summary judgment burden of showing Garza cannot establish his remaining accommodation claims. Therefore, summary judgment that Garza cannot establish his remaining accommodation claims should be **DENIED**.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the cross-motions for summary judgment be **GRANTED IN PART,** and **DENIED IN PART**.

Specifically, it is **RECOMMENDED** that the Court **GRANT SUMMARY JUDGMENT** that:

1. Garza is disabled within the meaning of the ADA, 42 U.S.C. 12101 et seq.;

2. UPS is precluded as a matter of law from raising a direct threat affirmative defense under the ADA;

3. Garza was not qualified to work as a driver from April 4, 2021, to June 15, 2021; and

4. Garza is precluded from pursuing driver accommodation claims arising from April 4, 2021, to April 4, 2022, and from May 22, 2022, to October 8, 2023

It is **FURTHER RECOMMENDED** that the Court **DENY SUMMARY JUDGMENT** as to all other issues, including that:

1. Garza was, at all relevant times, qualified to work as a driver;

2. Garza was, at all relevant times, discriminated against because of his hearing disability;

3. Garza's driver promotion claims are limited to full-time positions;

4. Garza was not qualified for any driver positions from August 19, 2020, to April 4, 2021; and

5. Garza is precluded from pursuing his remaining accommodation claims.

## V.  NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SIGNED** on this **16th** day of **June, 2025,** at Brownsville, Texas.

Ignacio Torteya, III
**United States Magistrate Judge**

24/24